GRUNDY, Respondent, vs. THE CITY OF JANESVILLE, Appellant, and THE NEW GAS LIGHT COMPANY, Respondent.

*March 21— April 11, 1893.*

*Municipal corporations: Injuries from defective street: Primary liability of gas company: Restoration of street after laying pipe: Defendants having adverse interests: Practice: Evidence: Remarks of court.*

1. Under secs. 1339*b*, 1339*c*, S. & B. Ann. Stats. (providing that whenever a city would be liable for an injury caused by any defect in a street, and such defect was caused by the default or negligence of another person or corporation, such person or corporation shall be primarily liable), where a city and a gas company were both made defendants in an action for injuries caused by a depression in a

Grundy vs. The City of Janesville.

street over a pipe laid by the company, it was, in the absence of rules governing the practice, a matter wholly within the discretion of the trial court to determine which defendant should first pass upon the jury list, take the initiative in cross-examining witnesses, and first introduce its evidence.

2. In such action it was not error to allow a witness to testify to having seen a place in the street, about where the accident occurred, where gravel had been placed after the accident, such testimony being allowed for and limited to the sole purpose of showing the location of the former depression and identifying it.

3. A witness who lived in a house opposite such depression, and who testified to having seen it, was properly allowed to testify also that she had heard wagons go into it at night.

4. It was not error to allow the manager of the gas company, who testified that he had been notified by the city after the accident that the place needed repairing, to testify also that he replied to such notice, denying the responsibility of the company for the depression.

5. The gas company, after laying the pipe in 1888, had complied with an ordinance requiring it to restore the street to its former condition "as near as may be." It had also kept the street in such condition for a year afterwards. In 1889 the city graded and improved the street at that place, and left it in an apparently good condition. *Held*, that the gas company was not liable for injuries caused by a depression over such pipe in 1890; and, the above facts being shown by the undisputed evidence, a verdict was properly directed in favor of the gas company.

6. Remarks of the trial court in directing the verdict in favor of the gas company, giving reasons therefor, are *held* not to have been improper or prejudicial to the defendant city, the plaintiff having shown a clear right to recover against either the company or the city, and the court having been careful not to speak of the merits of the case against the city.

APPEAL from the Circuit Court for *Rock* County.

The facts are stated in the opinion.

For the appellant there was a brief by *H. McElroy* and *Joseph B. Doe*, and oral argument by *Mr. Doe*. They contended, *inter alia*, that to warrant the court in directing a verdict there should be no doubt about the evidence. Directing a verdict should rest upon the same principle as

directing a nonsuit, *i. e.*, it should be done only when there is an entire want of evidence which on the most favorable construction tends to establish the case for the other party. *Cutler v. Hurlbut*, 29 Wis. 152; *Grasse v. M., L. S. & W. R. Co.* 36 id. 582; *Imhoff v. C. & M. R. Co.* 22 id. 681; *Gano v. C. & N. W. R. Co.* 49 id. 57; *Jackson v. Jacksonport*, 56 id. 310.

*William Ruger*, attorney, and *John Winans*, of counsel, for the respondent *The New Gas Light Company*.

For the plaintiff and respondent there was a brief by *Fethers, Jeffris & Fifield*, and oral argument by *M. G. Jeffris*.

Orton, J.   On and before the 17th day of April, 1890, there was a depression about a foot and a half wide, and about ten inches deep, commencing at the east side of South Academy street, in the city of *Janesville*, and extending about three fourths of the distance across said street.   This depression was about ninety-six feet from the northerly side of Dodge street, where that street intersects South Academy street, and was on the line of a trench dug across said street in the fall of 1888 by the *New Gas Light Company* of Janesville, for the purpose of laying service gas pipe into the house of one John McCulloch, opposite, from the main gas pipe in said street.   The plaintiff was riding with her husband, Samuel Grundy, in a single buggy, about 9 o'clock in the evening of said day, along said street, and when they came to said depression the forward wheels of the buggy went into it with a sudden jolt and jar, which threw the plaintiff violently up above the seat of the buggy, and she came down in such way as to severely injure her spinal cord and the nerves connected therewith, and produce a permanent physical disability, accompanied by much pain and suffering.   The plaintiff brought suit against the city to recover damages for her

said injury, on the ground that said depression was a dangerous defect in said street, and that the city was liable for its defective condition and want of repair.

The city served a notice, together with a copy of the summons in the action, upon the said *New Gas Light Company*, notifying said company that if the said street was in such a defective condition it was by reason of the carelessness and neglect of said company in not properly restoring said street, at the place of the alleged accident, after laying down the gas pipe in said trench, and that the city would hold said company liable for the damages and costs, if any, in said case. The city, in its answer to the complaint, pleaded in abatement of the action such liability of the gas company. The plaintiff thereupon made said gas company a party defendant, and served upon it a complaint charging said company with culpable negligence in restoring said street at that place, after laying down its gas pipe in said trench, and stating the particulars of her injury caused thereby, and demanded judgment against said company therefor. This proceeding to hold the gas company primarily liable for such injury is in accordance with secs. 1339b, 1339c, S. & B. Ann. Stats., which provide, in effect, that whenever a city would be liable for an injury caused by any defect in one of its streets, and such defect was caused by the default or negligence of another person or corporation, such person or corporation shall be primarily liable for all damages arising from such injury.

The testimony on behalf of the plaintiff tended strongly to show that said street was dangerously defective and out of repair at said place, and by reason of culpable negligence, and to establish the plaintiff's right to recover damages for her injury; and the plaintiff's right to recover is not much controverted on this appeal. The main and material question contested on the trial was whether the said gas company was liable by reason of its negligence in not re-

Grundy vs. The City of Janesville.

storing said street at the place of the accident, after laying down its gas pipe. At the close of the evidence the court, on motion to that effect, directed the jury to find a verdict in favor of the gas company, and the jury found a verdict of $5,000 damages in favor of the plaintiff and against the defendant the city of *Janesville*, and in favor of the gas company, as directed. Most of the errors assigned by the learned counsel of the appellant arose in the controversy between the city of *Janesville* and the *New Gas Light Company*.

1. It is assigned as error that the court compelled the city to pass upon the jury list before the gas light company, to take the initiative in cross-examining witnesses, and to introduce its evidence first. These are matters of practice arising under this new law, which, in the absence of rules, must be necessarily left to the discretion of the trial court; and whatever practice that court may adopt in these respects cannot affect very materially the rights of either defendant.

2. The witness Parish testified to having seen a place in said street near McCulloch's house where gravel had been placed after the accident. The counsel for the appellant moved to strike out this testimony, and the court denied the motion. It was allowed for the sole purpose of showing the location of the former depression, and to identify it, and it was expressly limited to such purpose. It was therefore admissible.

3. Mrs. McCulloch, who lived in the house opposite said depression in South Academy street, testified, as a witness for the plaintiff, to her having seen said depression in the spring of 1890, and then stated that "she heard wagons going into the ditch at night." This last statement was objected to by appellant's counsel, and the objection was overruled. She saw the depression, and described it, and she heard wagons going into it in the night.

What she saw and heard were the evidence of her senses that there was a depression there of some depth. Her seeing and hearing coincided as to that fact, both equally reliable and admissible.

4. Hiram Merrill, general manager of the gas company, testified, as a witness for the company, that he was notified by a Mr. Hanthorn, an officer of the city, after the accident, that there was a place on Academy street that needed repairing, or to that effect. In reply to a question by the court he testified that he said to Mr. Hanthorn that it was "about time our responsibility ceased so far as repairing that ditch." Mr. Merrill, as an officer of the gas company, when notified by an officer of the city to repair that ditch, had the right, and it was his duty, to reply to such notice and deny the responsibility of his company for it. If he did so, he then had the right to testify to it in connection with his testimony of the notice, so as not to leave the inference of assent by his silence to the duty of the company to repair it. It was a part of the *res gestæ* of the notice. It was his reply to it. But, besides this, it was entirely immaterial, and did not and could not affect the rights of the parties in any respect whatever.

5. The error on which the learned counsel of the appellant appears most to rely for reversing the judgment is the direction of the court to the jury to find a verdict in favor of the defendant the gas light company on the evidence. The principles of law which should govern the trial court in passing upon a motion to direct a verdict one way or the other are correctly stated in the brief of the learned counsel of the appellant. It is only where there is no reasonable ground for dispute as to what the evidence is, and what facts are established by it, and as to all proper inferences to be drawn therefrom in favor of or against a party, that the court may direct a verdict. Such a direction is not governed by the same rule as the setting aside a verdict

and granting a new trial, for that may be done in the discretion of the court, when there is a clear preponderance of the evidence against the verdict. There should be no evidence which the jury would have a right to consider, tending to prove the negligence of the gas light company in doing their full duty to restore or repair the street in this place, where they laid down their gas pipe, to justify the court in directing a verdict in its favor in this case. There should be no evidence which the jury had the right to consider, tending to prove that the gas light company did not comply with the law or ordinances of the city in respect to its restoring or repairing the street in that place. There must be such an absence of testimony against it as would justify the court in setting aside a verdict against the company for being without evidence or against the law and evidence. When the facts or inferences therefrom may reasonably be disputed or questioned, they should be submitted to the jury. Negligence is peculiarly a question for the jury; and the above rules are not too strict to justify the court in taking it away from them.

We shall consider the leading features of the testimony bearing upon this question. Did the gas light company, when it laid down its gas pipe in that place, in the fall of 1888, do all that the law and ordinances required in restoring the street? A perfect restoration of the street to its former condition was not possible. The ground broken by the trench, with the exception of the surface, was, in its natural state, compact and solid, and nearly impervious to water. The earth thrown up was broken apart and loose, and, when thrown back into the trench, any reasonable amount of tamping and pounding would not make that part as it was before. The rain and melted snow on that place, and on the adjacent ground, would affect it very differently. It would sink down readily into the trench, even to the bottom, and make the restored earth soft and im-

pressible. It would not so affect the adjacent hard and natural ground, but would rather run off from it into the trench. When teams and wagons passed over the place they would sink down into the trench, and the wet, loose earth would much of it be carried out by the horses' feet and wagon wheels, and constant repetition would soon lower the surface and make a depression at that place, and the pressure upon that wet mass of clay and loam would naturally keep lowering it in the trench. In a dry time the depression would become less, and nearly filled up, and then when it became wet it would get deeper. We must believe that as late as this accident there was a depression of several inches deep in this place, after all the tamping by the company when it laid the pipe, and the filling it up again the next spring, and the work of the city in grading over it the next fall. These natural processes will continue until, perhaps, in time the earth in the trench will become as solid, compact, and impervious as the adjacent ground, but how long will depend upon the character of the soil at that place.

These considerations are vastly important in determining the relative liability of the company and the city on account of this defect in the street in April, 1890. Gas and water companies must lay their pipes in the streets of our cities and villages, and the places where they are laid are liable, from time to time, to be dangerous depressions and defects, and they will require the care and attention of the city for a considerable length of time, as we all know. It is a very important question with these companies how long they shall be responsible in such cases for a depression in such a place, occurring after months or years have elapsed since there was the least appearance of any depression. Heavy rains or long-continued wet weather may again and again cause such a depression. This is one of the necessary consequences of our making light and water available

to the people through the agency of such companies.   Is
there such a continued liability of this gas company?

This gas pipe was laid under an ordinance of the city
passed September 28, 1882, which required the company,
after digging such a trench in the street, " as soon as pos-
sible to restore the street to its former condition *as near as
may be.*"   This ordinance does not require a perfect·res-
toration of the street to its former condition, and does not
require the company to maintain it in that condition after-
wards.   It must be done at once, or " as soon as possible;"
and, when once done as it should be under this ordinance,
the responsibility of the company is ended.   Without
specially referring to the evidence, it appears to have been
conclusively shown that the trench was filled in the usual
manner of doing such work, in the fall of 1888.   All the ·
earth removed by the excavation was replaced, and, as it
was shoveled in, it was tamped down with tamping irons
weighing twenty-four pounds each, and the top was left
rounded only an inch or two.   It could certainly not have
been better done without hauling dirt from somewhere else
and piling it on above. · It does not appear that any more
could have been taken into the trench by any reasonable
amount of pressure.   The undisputed evidence is that the
street at that place was restored to its former condition
" as near as may be."   The work was done in the usual
and ordinary way, by the use of the ordinary means, and
in an ordinarily careful and prudent manner.   There is
no evidence that there was any depression at that place
until the next spring, and then the company voluntarily
leveled it up with gravel.   It continued in this condition,
without defect or complaint, until the fall of 1889, when
the city graded and improved the' street over this place,
and left it in an apparently good and perfect condition.   It
appears that this street is quite level, and with very little
drainage, and that in wet weather the water stands on it

and soaks into the ground. Teams and wagons and common usage again made a depression over this trench by processes above described, and such was its condition in April, 1890, when this accident occurred.

The gas light company not only restored this street to its former condition as near as may be in the fall of 1888 when it laid its gas pipe, but kept it in such a condition for one year thereafter, as it was not required to do. But this was not all. The city took upon itself the responsibility of keeping this street in repair at this place, as well as other places, and again left it perfectly restored, and, if afterwards it became defective at this place, it was owing to natural causes, and it was clearly the duty of the city to repair it and to keep it in repair. There was literally no testimony whatever to hold the gas light company liable for this injury. There was no testimony that the company was in any respect negligent in restoring the street to its former condition. The circuit court did right in directing the jury to find a verdict in favor of the defendant the *New Gas Light Company.*

6. The learned counsel of the appellant assigns as error the remarks of the court in passing upon the motion to direct a verdict in favor of the gas light company, because they prejudiced the rights of the defendant city. The plaintiff appears to have shown a clear right of recovery against either the company or the city. The remarks of the court could not prejudice the case of the city. It was granting the motion, and giving the direction to the jury, which affected the rights of the city as against the gas light company; but neither the remarks nor the ruling of the court affected the question of the plaintiff's right to recover in the action. The court seems to have been studiously cautious not to speak about the merits of the case against the city. The remarks of the court, so called, were the very clear, cogent, and conclusive *reasons* given by the

court for granting the motion. The reasons given by the court were able, exhaustive, and satisfactory in ruling upon a new and very important question, and very suggestive to this court, and they were not improper, out of place, or liable to criticism.

7. The instructions of the court to the jury appear to have been very fair and correct, and the court followed a common practice in submitting to the jury forms for their verdict.

*By the Court.*— The judgment of the circuit court is affirmed.