Cooper vs. The City of Milwaukee.

COOPER, Respondent, vs. THE CITY OF MILWAUKEE, imp., Appellant.

*October 23 — November 16, 1897.*

*Appeal: Municipal corporations: Milwaukee: Liability for defective sidewalks: Constructive notice: Instructions.*

1. Upon appeal by one of several defendants from a judgment against himself, the supreme court cannot consider whether the trial court erred in granting a nonsuit in favor of another of the defendants.

2. In order to charge a city with liability for an injury caused by the defective condition of a sidewalk or the cover of a coal hole therein, it must have had either actual or constructive notice thereof, or the defect must have been of such a character or of so long standing that the city officers, in the exercise of ordinary care, must be presumed to have known of it.

3. A city cannot be held liable for an injury sustained by a person in consequence of stepping upon the displaced cover of a coal hole in a sidewalk, in the absence of evidence to indicate any defect, or tending to show that the cover was out of its socket for a sufficient length of time to have enabled the city officers to discover its condition and replace it, or that they had reasonable cause to apprehend that it might become displaced by ordinary use.

4. An instruction, in an action for such injury, in respect to the city's liability for negligence in not knowing of and repairing the defect, which ignored the question as to how long it had existed and what was its character, *held* misleading.

5. Where the defect was a secret one,— not apparent to observation,— it was error for the court not to point out to the jury the nature and character of a defect, notice of which would be imputed to the city.

6. It is not the duty of the officers of a city to examine from time to time the covers of coal holes in sidewalks, which are properly constructed and apparently secure in order to ascertain whether they are kept properly fastened.

7. To instruct the jury that "their common sense would teach them that if the socket in which the cover was to lie became partly filled with gravel or coal, it would raise the cover so that it would be liable to tilt" when stepped on, *held* to be reversible error, where there was no evidence that any such substances occupied the socket.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

This action was brought against the city of *Milwaukee,* Stedman S. Newton, and Alvah Remington to recover damages for personal injuries sustained by the plaintiff by reason of falling into a coal hole in the sidewalk at No. 1247 Kinnickinnic avenue, opposite the premises owned by said Newton, and occupied by said Remington as a grocery store and living apartments, under a lease thereof. It was alleged and shown, in substance, that the sidewalk opposite the premises was between nine and ten feet in width, and beneath it was an excavation used in connection with the cellar of the premises for receiving coal and wood through four coal holes, so located as to be in the line of travel, and that they were, by reason of faulty and defective construction and want of repair at the time of and for six months prior to the accident, in a dangerous condition to persons passing over the sidewalk; that they had no appliances for fastening the cover securely to the sidewalk, but were merely lying loosely in their sockets; that on the forenoon of the 10th of July, plaintiff, with her husband, George Cooper, was walking up Potter avenue, going west upon the walk on the north side of the street, lawfully, and in the exercise of ordinary care and prudence, and the plaintiff, relying upon the safe and proper condition of the walk, stepped upon the cover to the second coal hole from the east, in front of and opposite said

premises, and was precipitated into the said coal hole by reason of said insufficiency and want of repair, and in falling struck her breast upon the upturned edge of said cover, whereby she sustained serious injuries, to recover for which the action was brought.

The defendant city, admitting the ownership of the premises by Newton and Remington's tenancy of the same, denied that it had any notice of any defect in the sidewalk at the point named, or at any point near there, at the time mentioned, and denied that the plaintiff was injured by reason of any negligence of the defendant; and alleged that the sidewalk was constructed and maintained by the defendant Newton, the owner of the premises, who had constructed and maintained the cellar or vault beneath the same without any order, directions, or permission of the defendant city, and that the said openings in said walk had been made by said Newton for his sole use and convenience and the use and convenience of the tenants of the premises; and the city claimed that the accident or injury was produced solely by the wrong, default, and negligence of said Newton and said Remington in respect to such opening in the sidewalk, and the covering of the same, and not otherwise, and that they were and are primarily liable for such injury. The defendants Newton and Remington answered, denying, in substance, the material allegations of the complaint.

The plaintiff testified, in substance, that she and her husband were carrying a clothes basket of dishes, plates, etc., and she had four small pictures, framed, under one of her arms; that they were moving from Kinnickinnic avenue to the corner of Potter and Pine avenues; that as they passed up Potter avenue she happened to come to the hole, and in stepping on a cover went down, having hold of the basket with her right hand; that when she stepped on the cover to the coal hole it turned up, and struck her chest; that the cover was about twenty-two inches in diameter; that she

took no particular notice of the cover before or at the time
she stepped on it; that when resting on the corner she saw
the cover was on, but took no notice whether it was in its
place or not. One Charles Feldt testified to witnessing the
accident, and to seeing the plaintiff fall in the manhole;
that he had passed that way several times before, and there
were glasses in the holes in the cover; that the boys had
been knocking them out with stones, and they had been for
quite a while in that way; that at the time this hole was
not safe,— the cover was loose in the socket, quite a num-
ber of the bulls-eyes were broken out of the cover, the
cover inside the framework tilted up, and the ring in which
it rested would remain; that there was about an eighth of
an inch play on each side of it; that he examined the thim-
ble or ring the cover rested on; found that it was very
loose, and not fastened,— would not hold the plate; if you
would step on the side of it, it would slip out; he had tried
it himself, and pushed it out just by stepping on it; it would
go out because it was not fastened; the depth of the ring
or thimble in which the cover rested was three eighths of
an inch, and the width of it where it lay on the ring was
half an inch, so that it was a quarter of an inch off; it left
about a quarter of an inch for it to rest on,— that is, the
plate in the socket; the shoulder was three eighths of an
inch deep and one half an inch wide; it was a round edge
on the bottom, and that was what made it slip; that the
hatchway was small enough so the cover could play in the
ring, and, if the hatchway was pushed clear to the north
side of the ring and any one stepped on the south side, it
was liable to tip up. He testified to the examination, by
himself and others, of the cover and the socket immediately
after the occurrence; that they tried the cover by stepping
on it, and it went out of place; it was in place when they
came there; that they pushed easy, not with the heel, but
with the flat foot; did not push very hard, and it tipped

up; that the sidewalk from the building to the curb was thirteen feet wide.

One Hunt, a witness, testified that they found that there was no rod through the staple below the cover to fasten it; the cover did not fit tight enough; the holes and covers had been in the sidewalk about six years; witness found that by putting his foot on the cover, and by pushing or trying to, he could move the cover, and tip it up. Ferdinand Feldt further testified that he examined the hole where the plaintiff fell in next day, and found it in bad shape; there were three or four pieces of glass in, and the balance of them were gone; the cover did not fit well; and three days afterwards he saw the children take up the cover, and look into the hole; he did not try to see whether it would turn up; the cover was not fastened down when he examined it; it was an iron sheet, with holes in it, with small round pieces of glass as big as dollars.. There was no evidence to show that the city or its authorities had actual notice of the defects complained of. It was shown that at the time of the accident the cover of the coal hole was unfastened on the under side.

The defendants produced witnesses who gave evidence tending to show that the coal hole and cover and sidewalk were in a proper and safe condition and had been properly constructed, and that the city and its authorities had not been guilty of negligence in respect to the condition of the same.

At the close of the testimony the defendant city asked the court to direct a verdict in its favor, which was refused. The defendant city then asked the court to instruct the jury: (1) That, if they found from the evidence that the cover to this coal hole would not tip up or become misplaced by ordinary use of the walk in passing over it, but that at the time of the accident to the plaintiff it was out of the socket, then their verdict must be in favor of the defendant city, unless they also found from the evidence that it was out of

its socket for a sufficient length of time to have enabled the proper officers of the defendant city to have discovered its condition and replaced it, or unless they found from the evidence that the officers of the defendant city had reasonable cause to apprehend it might become misplaced by ordinary use. (2) That, if they found from all of the evidence that the coal hole was properly constructed, and there was nothing in its appearance to indicate any defect, or that it was unfastened, and no evidence that the proper officers of defendant city had knowledge that it was unfastened prior to the accident, under such circumstances the defendant city had no reasonable notice, and their verdict should be in favor of the defendant city. These instructions the court refused to give.

In respect to the question in the special verdict whether at the time of the plaintiff's injury said coal hole and the cover thereof were in such a condition that the cover was liable to tip when stepped upon, the court instructed the jury that it was for the plaintiff to show to their satisfaction that the coal hole and the cover were at that time in such a condition that the cover was liable to tip when stepped upon; that the mere happening of an accident does not raise even a presumption of a defect in the highway; that, if they believed that the cover was in its place when the plaintiff stepped upon it, and that it did in fact tilt and allow her to put her foot through it, that was evidence that it was in such a condition that such a thing might happen; that when a man steps upon a sidewalk and goes through it, the presumption is that the sidewalk was not firm, however many people there may be to swear that, in their opinion, there ought to have been no such accident, according to their notions of the construction of the sidewalk. And, referring to the fact that the evidence showed that the cover rested by its own weight in the socket, and that, as such things were made, they were not liable to fall through the socket

Cooper vs. The City of Milwaukee.

if they were in their normal and proper condition, the court stated that there was evidence tending to show that these covers were not fastened, and that they were sometimes raised, not merely in the use of them, but by boys at play; that they had holes in them which had formerly been occupied by plugs of glass called bulls-eyes; that you could get hold and lift them by means of those holes, the glass having been removed or lost; and added: *"Your own common sense would teach you that, if the socket in which the lid was to lie was occupied in part by gravel, or coal, or by any such substance,* that that would raise the lid so that possibly it might be liable to tip sideways and tilt; and might, although the place where it should have lain had been clean;" that they must determine "whether or not the coal hole was in such a condition that the cover was liable to tip when stepped upon at the time of the accident."

On the subject whether the city had actual notice of the defect, the court called the attention of the jury to the fact that there was no evidence that the city, or any of its officers, had been actually notified of the condition of the sidewalk or the coal hole, and that it seemed the jury would be obliged to answer the interrogatory as to actual notice in the negative; but, if so answered, the question remained whether the defect had existed so long and so notoriously that the defendant city would, in the exercise of proper care on the part of its agents and officers, have known of the defect; and that the jury must be satisfied from the evidence to a reasonable certainty that the defect had existed so long and so notoriously that the city would, in the exercise of proper care on the part of its agents and officers, have known of such defect, otherwise the interrogatory should be answered in the negative. The question was submitted whether the cover was actually misplaced before the plaintiff stepped upon it; and also whether, being in its place, although unfastened, it could have tipped when stepped upon. The

court charged further, in respect to the question whether the city was guilty of any negligence on its part, or on the part of its officers or agents, which was the proximate cause of the injury, that their answer must depend upon the answers to the former questions; that if they found, in answer to the former questions, that the condition of the sidewalk at this point was defective, and they found that the city and its officers or agents knew, or ought to have known in the exercise of proper care, of the existence of such defective condition, then, in the absence of any evidence tending to show that any steps were ever taken to remedy that defect, they should answer that interrogatory in the affirmative. The court left it to the jury upon the whole evidence to find " whether or not this coal hole was in such a condition that the cover was liable to tip when stepped upon at the time of the accident."

The jury found that the coal hole and cover, in their existing condition, were defects in the sidewalk, and that the cover was liable to be tipped when stepped upon; that the defendant city had no actual notice of the defect, but that it had existed so long and so notoriously that the city would, in the exercise of proper care on the part of its agents and officers, have known of the defect. It was found that the cover was so constructed that it could be fastened from below so as to prevent its tipping, but was not so fastened at the time, and that said cover *was actually misplaced before the plaintiff stepped upon it;* that it could, although unfastened, have tipped when stepped upon; that the defendant city was guilty of negligence on its part, or on the part of its officers or agents, which was the proximate cause of the plaintiff's injury; and damages were fixed at $1,300.

The defendant city moved to set aside the finding of the jury, in substance as stated, in the answers to certain questions submitted to them, and because of error in the charge of the court to the jury. The motion was denied, and plaint-

iff had judgment on the verdict against the defendant city and the defendant Remington for $1,419.91, from which the city appealed.

For the appellant there was a brief by *Austin & Fehr*, of counsel, and oral argument by *W. H. Austin.*

For the respondent there was a brief by *Krez, Kellogg & Krez*, and oral argument by *H. L. Kellogg.*

PINNEY, J.   The question whether the court erred to the prejudice of the defendant city in granting judgment of nonsuit against the plaintiff in favor of the defendant Newton is not before the court for consideration on the appeal of the defendant city from the judgment rendered against it in favor of the plaintiff.   There has been no appeal taken from the judgment of nonsuit rendered in favor of the defendant Newton.   The court cannot, on the present appeal, enter upon the question whether the separate judgment rendered in favor of the defendant Newton was erroneous or not.

In the absence of actual or implied notice of the defective condition of the sidewalk and cover of the coal hole therein, it cannot be maintained that the defendant city would be liable for the injury which the plaintiff received as detailed in the evidence.   There is no evidence to sustain the verdict on the ground of *actual* notice to the city.   The material questions for consideration arise upon the instructions given to the jury and upon those refused, relating to the question of implied or constructive notice of the alleged defects in the sidewalk and cover of the coal hole.   In order to charge the city with negligence which was proximately the cause of the plaintiff's injury on the ground of implied notice, the defect in the sidewalk and cover of the coal hole must have been of such a character or of so long a standing that the city must be presumed to have had notice of it.   The city was bound to be vigilant in observing defects in the side-

Cooper vs. The City of Milwaukee.

walks, and in remedying them when they became observable
to an officer exercising intelligent and reasonably vigilant
supervision over them.   The instructions numbered 1 and 2
in the foregoing statement are, we think, in accordance with
the well-settled law relàting to the liability of the city in
actions like the present, and we think that they should have
been given to the jury as asked.

The city is not an insurer against injuries or accidents
occurring on its sidewalks.   Its liability is for *negligence* in
not performing its duty to the public in not keeping them
in suitable condition and repair.   The evidence tended to
show that the coal hole and cover had been properly con-
structed, and there was nothing in the evidence to indicate
that the cover of the hole was unfastened, or that the city
officers or authorities knew that it was unfastened prior to
the accident.   There was no evidence to indicate any defect,
or tending to show that the cover was out of its socket for
a sufficient length of time to have enabled the proper offi-
cers of the city to have discovered its condition and replaced
it, although the verdict finds that the cover was actually
misplaced before the plaintiff stepped on it; nor is there
any evidence to show that the city or any of its officers had
reasonable cause to apprehend that it might become dis-
placed by ordinary use.   In respect to the question whether
the city, its officers or agents, were guilty of negligence
which was the proximate cause of the injury, the trial judge
charged the jury, in substance, that " if the sidewalk at the
point in question was defective, and they found that the
city, its officers· and agents, knew, or ought to have known
in the exercise of proper care, of the existence of such de-
fective condition, then, in the absence of any evidence tend-
ing to show that any steps were ever taken to remedy that
defect, they should answer the said interrogatory in the af-
firmative."   This instruction was given without respect to
the length of time the defect had existed or its character,

Cooper vs. The City of Milwaukee.

and was, we think, misleading. The trial judge left it to the jury upon the whole evidence to find whether or not the coal hole was in such a condition that the cover was *liable* to tip when stepped on at the time of the accident. He left it for the jury to determine the nature and character of the alleged defect which would serve to establish implied notice, without any instructions in point of law on that subject, but told the jury that they must be satisfied from the evidence, to a reasonable certainty, that the defect had existed so long and so notoriously that the city would, in the exercise of proper care on the part of its officers or agents, have known of it, otherwise the question would have to be answered in the negative. The defect in the sidewalk in the present instance was a secret one, not apparent to ordinary observation; and the nature and character of a defect, notice of which would be imputed to the city within the rule stated, was not pointed out as it should have been by the trial judge, so that the instruction as given really left the jury without any proper guide on the subject, and wholly failed to meet the just requirements of the case. In this respect the case of *Duncan v. Philadelphia*, 173 Pa. St. 550, is entirely in point. Besides, we think that it was not, and is not, the duty of a municipality such as the defendant city, as stated in the second instruction above requested, to examine covers to coal-hole openings such as the one in question here, to ascertain if the covers to the same are unfastened, unless there is something apparent on the surface, or otherwise brought to their attention, to lead its proper officers to believe that the same are loose and likely to become misplaced. These requests were denied by the court, and nothing of a similar character or import was given in their stead.

Upon the question of notice it seems that the rule is that the facts must be such as to lead to the inference that the proper officers of the town whose duty it is to attend to municipal

affairs did actually know of the existence of the defect, or with proper diligence and care might have known it. *Hanscom v. Boston*, 141 Mass. 242, 246. In the case last cited the court said: "It has never yet been held to be the duty of the officers of the city to examine from time to time covers of coal holes which are properly constructed and apparently secure, to see whether the occupants of the cellars under the coal holes keep the covers fastened on the inside. In all the decided cases under former statutes, if the defect had not existed for twenty-four hours, and the town officers had no actual notice or knowledge of it, or did not create it, it was left to the jury to find whether its officers, by proper diligence and care, might have known it, only when there was evidence that the defect was *open and visible*, so that it might be said to be, in a sense, notorious." "We think, if the coal hole was properly constructed, and the cover was properly fitted and was not apparently insecure, and the only defect, if any, was that it was left unfastened on the inside by the occupant of the cellar, and this was not known to the officers of the city or apparent from the street, that the jury could not properly find, under existing statutes, that the city could have remedied the defect or prevented the injury by reasonable care and diligence."

The trial judge, referring to the fact that the evidence showed that the cover rested by its own weight in the ring or socket, and that, as such things were made, they were not liable to fall through the socket if they were in their normal and proper condition, said to the jury, in substance, that there was evidence that they were sometimes raised, not merely in the use of them, but by the boys at play; that they had holes in them, which had formerly been occupied by plugs of glass, called bulls-eyes; that you could get hold of them and lift them by means of these holes, the glass having been removed or lost; adding: "*Your own common sense would teach you that, if the socket in which the lid was to lie*

*was occupied in part by gravel or coal, or by any such sub-
stance, that that would raise the lid, so that possibly it might
be liable to tip sideways, and tilt; and might, although the
place where it should have lain had been clean.*" There was
no evidence produced that the socket or ring in which the
lid or cover was to lie was occupied in any part by gravel,
coal, or any other substance that would raise the lid or render
it liable to tip, as thus supposed; and there was no evidence
before the jury to warrant the trial judge in suggesting any
such matter as a ground of liability by which to charge the
defendant. His observations in this respect amounted, in
substance, to a permission or suggestion that the jury might
conjecture and guess at a cause of action in this respect, in
the absence of any evidence whatever to support it. The
observations were misleading, and, in our judgment, so prej-
udicial to the rights of the defendant as to require a reversal
of the judgment. Verdicts must be given upon competent
evidence produced in court, and not upon mere loose con-
jecture or supposition.

In view of the conclusion at which we have arrived, it is
not necessary to consider whether the court erred in refus-
ing to nonsuit the plaintiff on the motion of the defendant
city, or in refusing to direct a verdict for the defendant city,
inasmuch as upon another trial the evidence may be such as
to present the case in these respects in quite a different light.

By sec. 1339*b*, S. & B. Ann. Stats., the course of procedure
laid down in *Papworth v. Milwaukee*, 64 Wis. 389, has been
changed, and the action is now brought in cases like the pres-
ent against all wrongdoers in the first instance, without re-
gard to the question whether they are all primarily liable;
and after verdict the court is required to enter judgment
against all the defendants against whom the verdict shall
be found, but shall stay execution against the city, if not
primarily liable, until execution against those who are pri-
marily liable shall have been returned unsatisfied in whole

or in part. The record fails to show that the appellant has been prejudiced in the least by the course pursued in the present case.

For the reasons already stated, we think that the recovery in this case is erroneous, and that it must be reversed.

*By the Court.*— The judgment of the circuit court is 're-versed as to the defendant city only, and the cause is re-manded for a new trial.