DEVINE, Respondent, vs. CITY OF FOND DU LAC and another, imp., Appellants.

*January 10—January 28, 1902.*

*Municipal corporations: Defective sidewalk: Personal injury: Contributory negligence: Primary liability of lotowner: Repeal of charter by general law: Failure to repair.*

| | |
|---|---|
| 113 | 61 |
| d113 | ¹266 |
| 113 | ¹330 |
| 113 | 61 |
| 57 LRA | 468 |
| 113 | 61 |
| e116 | ²546 |
| e116 | ²547 |

1. A sidewalk eighteen or twenty feet wide was constructed of limestone flagging which had become uneven and very slippery, but a plank walk eight or ten feet wide had been laid over it, on the

side next to the lot, along which travelers might pass in safety. Plaintiff, in the daytime, with knowledge of the condition of the stone walk and with nothing to distract her attention unnecessarily chose to walk on the stone walk rather than on the board covering, and fell and was injured. *Held*, contributory negligence precluding a recovery.

2. A city charter required the lotowner to keep and maintain the sidewalk in front of his premises "in a safe, convenient and effective condition," and gave the person injured by his failure to do so the right to maintain an action against him to recover therefor. It also declared the true intention and meaning of the act to be that the city should not in any case be liable for damage resulting from a defective sidewalk, or from neglect to keep the same in repair, and that the only cause of action to which the city should be liable in connection with, or relating to, damage resulting from the failure to keep the sidewalks in safe condition should be by reason of the failure of the person injured to collect a judgment recovered against the lotowner. It also provided that when an execution upon a judgment against the lotowner should be returned unsatisfied the injured party might commence an action against the city, but that the city might interpose any defense it might have on the merits, and that the judgment against the lotowner should not operate as a bar to its defenses. *Held:*

(1) Said provisions of the charter remained in force notwithstanding the subsequent enactment of sec. 1340*a*, Stats. 1898 (providing that when damage shall happen in a highway by reason of the negligence of a third person, such person shall be primarily liable therefor, but that the municipality may be sued in the same action with the person primarily liable). *Raymond v. Sheboygan*, 76 Wis. 335, and *Schaefer v. Fond du Lac*, 104 Wis. 39, distinguished and limited.

(2) The right to sue the city at all is dependent upon the condition precedent that an execution shall have been returned unsatisfied on a judgment against the lotowner.

(3) The lotowner is primarily liable for injuries caused by lack of repairs. *Cooper v. Waterloo*, 88 Wis. 433, and other cases, distinguished.

APPEALS from a judgment of the circuit court for Fond du Lac county: MICHAEL KIRWAN, Circuit Judge. *Reversed on both appeals.*

This action is brought to recover damages for injuries claimed to have been sustained by plaintiff by slipping on a

stone sidewalk in the city of *Fond du Lac*. The defendants Welch and *Mangan* are made parties with the city as being the owners of the property in front of which the accident occurred. The sidewalk in question was constructed of limestone flags of irregular size and shape. The defect complained of consisted in the fact that the stones were placed irregularly and uneven, the upper service being worn smooth and slippery, and by lapse of time and use, had become more and more uneven, and dangerous to travelers. The walk was eighteen or twenty feet wide. The side next to the buildings for eight or ten feet was covered by planks. The plaintiff came out of a meat market adjoining the premises in question, and walked diagonally across the plank walk to the stone walk, where she slipped and fell, and was injured. It was a "nice, bright day," and there was no sleet or snow on the ground. The city answered, denying that the walk was defective, and alleged contributory negligence. It also set up that it was not primarily liable under its charter, and that, if the walk was out of repair, the owners of the property, and not the city, were liable to plaintiff. The defendant *Mangan* answered that he was not the owner of the property mentioned, and only had a mortgage interest therein. The answer of Mrs. Welch is largely by way of denial.

The testimony of plaintiff and her witnesses related to the manner in which the accident occurred, the injuries sustained by her, and a description of the walk. Motions for a nonsuit were denied at the close of plaintiff's evidence, and duly excepted to. The defendants' testimony tended to show that the walk was not defective, and that the plaintiff voluntarily went from the plank walk to the stone walk. The defendant *Mangan* and his witnesses testified that the quitclaim deed to him was intended as security for the amount due on a mortgage he held on the premises and for advances made by him to pay certain attorney's fees for which his daughter was liable.

At the close of the testimony the court denied motions to direct a verdict for the defendant, which ruling was duly excepted to. A special verdict of eighteen questions was submitted. The jury found the plaintiff was injured by slipping and falling on the walk; that the walk was so insufficient and wanting in repair as to be dangerous to travelers; that such want of repair had existed for two years; that such condition was produced by "the wrong, default, and negligence" of both the lotowners and the city; that such condition had existed for such a length of time that both the lotowner and the city ought to have discovered it and repaired the walk before the injury; that in the exercise of ordinary care both the lotowner and the city ought to have foreseen that persons traveling thereon would slip and fall and be injured; that the plaintiff was not guilty of contributory negligence; that the quitclaim deed to *Mangan* was not a mortgage, and that plaintiff's damages were $1,500. Exceptions were taken to the form of the verdict and to portions of the charge. The court denied a motion made by defendant *Mangan* to set aside the answer to certain questions and for judgment in his favor; also a motion of each defendant to set aside the verdict and to grant a new trial; also a motion by each defendant for judgment in their favor notwithstanding the verdict, and a separate motion by the city for judgment in its favor on the ground that no cause of action had been proven against it. The court made findings of fact supposed to be established by undisputed evidence relating to plaintiff's proof of title in the defendant *Mangan*, to which numerous exceptions were taken. Plaintiff's motion for judgment on the verdict was granted. From the judgment against all the defendants the defendants *Mangan* and the city take separate appeals.

For the appellants there were briefs by *J. M. Gooding,* for the appellant *City of Fond du Lac,* and by *Duffy & McCrory,* for the appellant *Mangan,* and the cause was argued orally by *J. H. McCrory* and *L. I. Lefebre.*

For the respondent there was a brief by *J. R. Mathews,* attorney, and *T. L. Doyle,* of counsel, and oral argument by *Mr. Doyle.*

BARDEEN, J.   1. The first question common to both appeals is that of plaintiff's contributory negligence.   The evidence on the subject was offered by plaintiff, and is without dispute.   The sidewalk where the accident occurred was eighteen or twenty feet wide.   It was constructed of limestone flagging, the stones being of irregular size and shape.   The upper surface was uneven, varying from an inch to two inches from a level, worn smooth from extended use, sloping to the north and toward the street, and was very slippery.   At the place where plaintiff is supposed to have fallen there was a hollow or depression in the face of the stone about three by five inches in area, and one and one-half inches deep.   On the side next to the building a plank walk had been laid over the stones, eight or ten feet wide, which also extended north and in front of the adjoining building, and perhaps further. The accident happened on a clear, bright day in October. There was no snow or sleet on the walk.   The plaintiff came out of a meat market south of the premises in question, and crossed the plank walk diagonally, going north.   Her description of the accident is as follows:

"I came a few steps out right on the boards.   I think about one or two steps, until I stepped on the stones.   I went slantwise on the boards, for I remember of not coming on the stones for quite a little distance; and when I stepped on the stones then a few steps, my feet was taken from me, and that is all I know about it.   Stepped on something that took my feet from me.   I don't think I could have walked only a few steps after I struck the stone walk before I fell, because I am very careful on stones when I come to them.   I just stepped on something that was kind of slanting, I imagine, and my two feet were taken from me so quick, and I can't account for any more   There were boards for me to walk on.   I don't know exactly why I didn't continue to walk on those boards that

extended right along there. I looked down on the stone walk before I got off the board walk. It appeared to me to be rough. *Q.* Why did you go on it then? *A.* Why, I don't know, sir, just to tell the truth about it. I don't know why I did go on it. Just walked down on the stones,—down off the boards. I looked just as I was putting my foot down, and then walked along. When I fell I was looking right ahead of me. I can't say as I was looking on the walk, but was looking right ahead."

She testified further that she did not know whether she slipped on the stone or from something that was on the stone. The testimony shows conclusively that she might have passed along on the plank portion of the walk in safety. She saw that the stones of the walk were uneven. Their smooth and slippery condition was perfectly apparent. Every element of danger disclosed by the testimony was before her. There was nothing to distract her attention, or to lull her into a sense of security. If it be conceded that the sidewalk was in a defective and unsafe condition, she knew it to its fullest extent. She might have avoided the danger by keeping on the plank walk. With full knowledge of all the conditions, in open daylight, with nothing to take her mind from what was before her, with no necessity therefor, she voluntarily encountered the danger, and was injured. To say that she may recover for such injuries is to offer a reward for temerity and rashness. If the rough, uneven, and slippery condition of the walk constituted an actionable defect, it must follow, since its nature and character were known to the plaintiff, that it was imprudent for her to venture upon it,—such imprudence as will preclude a recovery under the decisions of this court. *Goldstein v. C., M. & St. P. R. Co.* 46 Wis. 404; *Hausmann v. Madison,* 85 Wis. 187; *Fisher v. Franklin,* 89 Wis. 42; *Collins v. Janesville,* 111 Wis. 348. We need but repeat the rule stated in the last case cited that, if a person knows of a dangerous defect in a sidewalk, and is injured thereby, it is presumed that he remembered, and was negligent. No explanatory circum-

stances were offered in this case to rebut the presumption; hence the motions for a nonsuit ought to have been granted.

2. Another question of importance arises upon the contention of the city that under its charter no liability is imposed upon it until all legal remedies have been exhausted against the lotowner. The charter of the city of *Fond du Lac* is unlike that of any other this court has ever been called upon to consider. With reference to accidents happening in such portions of the streets not included in sidewalks, caused by the wrong or neglect of another, the charter makes such person primarily liable for all damages. This provision (sec. 4, subch. 18, ch. 152, Laws of 1883) received construction in *Schaefer v. Fond du Lac,* 99 Wis. 333, and again in 104 Wis. 39, and it was held that the injured party must exhaust his legal remedies against the parties primarily liable before the city could be held responsible, although under sec. 1340a, Stats. 1898, both might be sued in the same action. The provisions of the charter regarding injuries sustained on defective sidewalks are quite different from the one above mentioned, and different from those of any other charter to which our attention has been called. Sec. 1, subch. 18, of the charter, provides that the lotowner shall at all times keep and maintain the sidewalk in front of his premises "in a safe, convenient, and effective condition." Failing so to do, any person injured is expressly given the right to institute and maintain an action against him to recover for all damages or injuries resulting therefrom, if commenced within one year. Sec. 2 is as follows:

"It is hereby declared to be the true meaning and intent of this act, in the provisions relating thereto, that the said city of *Fond du Lac,* shall not in any case, be liable to any person or persons, for damages resulting from the defective, unsafe or dangerous condition of any walk or sidewalk, mentioned in the foregoing section, or for any neglect in the keeping and maintaining of the walk or sidewalk of said city in a safe, convenient or effective condition, and the only cause of action

to which the said city of *Fond du Lac* shall be liable, or which shall be maintained in any court against said city, in connection with, or relation to damages resulting from the failure to keep the walks or sidewalks in said city, in a safe, convenient or effective condition, shall be by reason of the failure of any person or persons to collect a judgment recovered against such owner, or owners, or corporation or society, for any such damages, resulting from such injuries, as hereinbefore stated."

The following section then provides that whenever an execution upon a judgment against an owner shall have been returned unsatisfied, and there is no fraud or collusion, the injured party may then commence an action against the city, but the latter may interpose any defense it may have on the merits, and the judgment against the owner shall not operate as a bar to its defenses. The section also prescribed certain other limitations and conditions upon the right not material to this litigation.

These provisions received consideration by this court in *Henker v. Fond du Lac,* 71 Wis. 616. An action was brought directly against the city by a person injured on a defective sidewalk. The opinion by Chief Justice Cole in part reads as follows:

"The insuperable difficulty in the way of maintaining this action is that it does not appear that the plaintiff has exhausted his remedy against the lotowner, who is made primarily liable by these charter provisions, before this action was brought, but the contrary fact is shown. . . . It seems unnecessary to discuss here the question as to the liability of the city, because the intent of the charter is perfectly manifest, and requires the injured party to exhaust his remedy against the lotowner as a condition precedent to the right to maintain the action against the city."

It was also asserted that the provisions of the charter were clear and precise as language can express that it is the duty of the lotowner to keep the sidewalk in front of his lot in a safe condition, and make him liable for all damages of every

nature resulting from a neglect to perform that duty. They also require the injured party to exhaust his remedy to recover and collect his damages from the lotowner before commencing an action to enforce the liability of the city. The validity of the provisions making it the duty of lotowners to keep sidewalks in repair was affirmed, and the judgment against the city reversed. Under this construction the city stands in the relation of a guarantor, and cannot be made to respond in damages until it is shown that they cannot be collected from the lotowner. We see no reason to question the correctness of this construction.

The plaintiff, however, assumes that under sec. 1340a, and the case of *Raymond v. Sheboygan,* 76 Wis. 335, she may bring and maintain the action against both city and lotowner, enforcing the judgment against the city only after failure to collect from the lotowner. Reference is also made to *Schaefer v. Fond du Lac,* 104 Wis. 39, as sustaining that view. This assumption is unwarranted, as we shall now attempt to show. In the first place, sec. 1340a did not create any new liability or give any new right of action, but was intended merely to regulate the remedy for rights of action otherwise created. *Cooper v. Waterloo,* 88 Wis. 433.; *Fife v. Oshkosh,* 89 Wis. 540; *Toutloff v. Green Bay,* 91 Wis. 490. In the regulation of the remedy it was deemed proper to allow the injured party to join the party *primarily liable* with the city where there was no express charter provision in the way. In nearly all of the cases where this section has been under consideration, and notably in *Raymond v. Sheboygan,* the charter provisions are to the effect that whenever any person has been injured by reason of any defect in the street for which the city would be liable, and such defect was caused by the negligence of another person, the city should not be liable therefor until all legal remedies had been exhausted against the person through whose negligence the defect was caused. Such is the provision in the *Fond du Lac* charter in relation to

injuries happening in such portions of the street as are not
included in the sidewalk which was considered in the *Schae-
fer Case*. There being no special charter provision regulat-
ing the remedy in such cases, the general law steps in and
permits the offending party and the city to be joined in
one action.

It must be kept in mind that neither the lotowner nor the
city is liable for mere defects in a sidewalk unless made so
by statute. It has been many times said that in imposing
this liability the legislature may annex such conditions as
they may think proper. *Daniels v. Racine,* 98 Wis. 649;
*McKeague v. Green Bay,* 106 Wis. 577. Under the pro-
visions of the charter in question the absolute duty of main-
taining sidewalks is upon the lotowner. He is made liable
for all damages happening to travelers in case he neglects
to fulfill that duty, and the right to bring an action for that
purpose is expressly given to the injured party. The city
is also made liable, but only upon the conditions mentioned.
Under sec. 3, subch. 18, no action can be commenced against
the city until after a return of an execution on a judgment
against the lotowner unsatisfied. The exact method of pro-
cedure being mapped out, and the conditions upon which the
city's liability is based being the subject of express regula-
tion by the charter, so far as injuries on sidewalks are con-
cerned, we cannot say that it was the intention of the legis-
lature by sec. 1340a to repeal or wipe out such provisions.
It is true that there is language used in *Raymond v. Sheboy-
gan* broad enough to carry that impression, but what was
said must be read in connection with the situation there pre-
sented and the charter provisions there being construed. Sec.
4986, Stats. 1898, says that the provisions of city and village
charters shall prevail over those of the Revised Statutes
unless a different intention is plainly manifest. In view of
the construction given sec. 1340a in *Cooper v. Waterloo, Fife
v. Oshkosh,* and *Toutloff v. Green Bay,* to the effect that it

was not intended thereby to create any new liability or give any new right, but only to regulate the remedy for rights of action otherwise created, we cannot say that the intention is clearly manifested to create a right of action directly against the city in abrogation of the express provisions of the charter. The injured party must exhaust his remedy against the lotowner according to charter requirements before his right to sue the city is enforceable. We desire to emphasize the fact that under the charter, right to sue the city at all is dependent upon the condition precedent that an execution shall have been returned unsatisfied on a judgment against the lotowner.

In this connection the defendant *Mangan* argues that the lotowner, under the charter, is not primarily liable for mere lack of repair. He bases his argument upon the cases of *Cooper v. Waterloo,* 88 Wis. 433; *Sommers v. Marshfield,* 90 Wis. 60; *Toutloff v. Green Bay,* 91 Wis. 490; and *Selleck v. Tallman,* 93 Wis. 246. We need only to say that the charter provisions considered in these cases are entirely different, and much less comprehensive, than the ones under consideration. This difference will be evident on comparison, and is sufficient to indicate that the rule of those cases cannot apply here.

What has been said indicates that the case must be reversed as to both defendants. We deem it unnecessary to treat other questions raised in the briefs.

*By the Court.*—The judgment is reversed on both appeals. As to the defendant *Mangan,* the court is directed to grant a new trial. As to the defendant city, the court is directed to dismiss the action.