DICKENS, Plaintiff and Respondent, v. KENSMOE and another, Defendants and Third-Party Plaintiffs and Respondents: EAU CLAIRE COUNTY, Third-Party Defendant and Appellant.

*No. 176. Argued October 30, 1973.—Decided November 27, 1973.*
(Also reported in 212 N. W. 2d 484.)

For the appellant there were briefs and oral argument by *H. R. Klueter* of Wausau.

For the respondents there was a brief by *Garvey, O'Brien & Anderson* of Eau Claire, and oral argument by *Richard J. Kelly* of Eau Claire.

HALLOWS, C. J. The question is whether Kensmoe is entitled to contribution against Eau Claire county if he pays 100 percent of the judgment. Eau Claire county claims it is only secondarily liable and therefore is not liable for contribution. It bases its contention upon sec. 81.17, Stats.,[1] and it is the construction of this statute that is determinative of this case.

The facts are not in dispute. During the week of June 16, 1969, Eau Claire county's highway department was blacktopping Highway Q, using its own employees and equipment. When work on Highway Q ended on June 21, 1969, a windrow of blacktop about two feet high and eight and one-half feet wide was left on the westbound lane of Highway Q, partially blocking this lane. There was a sign, reading "Road Under Construction" placed about two and one-half miles east of the construction area at the intersection of county Trunk Highways Q and K. There was another sign placed 235 feet east of the windrow, reading "Road Construction." At the east end of the windrow there were two flat boards painted with reflective paint and two pot flares. At approximately 1 a. m. on June 22, 1969, defendant Kensmoe was driving his automobile with Dennis Dickens as a passenger in a westerly direction on Highway Q. He struck the windrow of blacktop which caused his car to overturn and kill Dennis Dickens.

[1] "81.17 **Highway defects; liability of wrongdoer; procedure.** Whenever damages happen to any person or property by reason of any defect in any highway . . . for which any . . . county would be liable, and such damages are caused by, or arise from, the wrong, default or negligence thereof and of any person, or private corporation, such person or private corporation shall be primarily liable therefor; . . ."

Kensmoe claims sec. 81.17, Stats., applies only when the negligence of a person other than a municipality contributes to the creation of the highway defect for which the municipality or county is responsible, while Eau Claire county contends the statute operates to make a municipality or county only secondarily liable whenever the plaintiff's damages are caused by the default or negligence of both the municipality and a private tort-feasor and the negligence of the private tort-feasor need not contribute to the creation or maintenance of the defect in the highway.

The historical construction of sec. 81.17, Stats., comports with the argument of Kensmoe, although it can be argued the present language of the section gives support to the position of Eau Claire county. The statutory liability of a municipality for damages sustained as a result of a highway defect goes back to the beginning of this state. This liability was first created by Revised Statutes of 1849, ch. 16, sec. 103.[2] At that time, governments were immune from tort claims under a common-law, court-made rule which was expressly recognized in *Hayes v. Oshkosh* (1873), 33 Wis. 314, 14 Am. Rep. 760. The statute was a forerunner of present sec. 81.15 and was designed to ameliorate in part the harshness on the public of the doctrine of governmental tort immunity. This statute of 1849 expressly created liability on a town for damages caused by reason of the insufficiency or want of repair of a road. The language creating this liability became Title VI, ch. 19, sec. 120, Revised Stats. 1858, which was construed in *Kittredge v. Milwaukee* (1870), 26 Wis. 46. The court there held the statute im-

---

[2] This statute provided in relevant part as follows:

"If any damage shall happen to any person, his team, carriage, or other property, by reason of the insufficiency or want of repairs of any bridge, or sluiceway, or road in any town in this state, the person sustaining such damages shall have a right to sue for and recover the same against such town . . . ." Revised Stats. 1849, Title VI, ch. 16, sec. 103.

posed liability regardless of whether the municipality created the defect in the highway or the defect was allowed to exist due to insufficiency of repair. In *Kittredge* the plaintiff was injured when he was thrown from his horse-drawn carriage while crossing an abandoned horse-drawn railroad track which was raised some five inches above the surface of the street.

Thereafter, municipalities began to enact ordinances designed to protect themselves from *Kittredge*. These ordinances generally provided that when the negligence of a private tort-feasor had created the defect for which the municipality was also liable statutorily, the municipality's liability was only secondary to the liability of the private tort-feasor. A city ordinance of this type was involved in *Hincks v. Milwaukee* (1879), 46 Wis. 559, 1 N. W. 230, and was held valid and constitutional. In a series of cases, the court construed ordinances of this type to impose only secondary liability on the city when the defect in the street for which the city was statutorily liable was caused by the negligence of a third person. *See Amos v. Fond du Lac* (1879), 46 Wis. 695, 701, 1 N. W. 346; *McFarlane v. Milwaukee* (1881), 51 Wis. 691, 693, 8 N. W. 728; *Papworth v. Milwaukee* (1885), 64 Wis. 389, 398, 399, 25 N. W. 431; and *Raymond v. Sheboygan* (1887), 70 Wis. 318, 35 N. W. 540.[3]

[3] The ordinance involved in *Hincks v. Milwaukee* provided that:
"Whenever any injury shall happen to persons or property in the said city of Milwaukee, by reason of any defect or encumbrance of any street, sidewalk, alley or public ground, or from any other cause for which the said city would be liable, and such defect, incumbrance or other cause of such injury shall arise from or be produced by the wrong, default or negligence of any person or corporation, such person or corporation so guilty of such wrong, default or negligence, shall be primarily liable for all damages for such injury; and the said city shall not be liable therefor until after all legal remedies shall have been exhausted to collect such damages from such person or corporation." (p. 564) An act to revise, consolidate and amend the charter of the city of Milwaukee, Laws of 1874, ch. 184, sec. 1.

In 1889, a statute was enacted entitled "Primary Liability for Damages—Parties" which contained almost verbatim the language of these city ordinances. *See* Laws of 1889, ch. 471, secs. 1 and 2; 1 Sanborn & Berryman, Annotated Statutes (1889), sec. 1339 *b*. The construction previously afforded city ordinances on the subject was adopted as a construction of this section in *Kollock v. Madison* (1893), 84 Wis. 458, 54 N. W. 725; *Grundy v. Janesville* (1893), 84 Wis. 574, 577, 54 N. W. 1085. In *Cooper v. Village of Waterloo* (1894), 88 Wis. 433, 437, 60 N. W. 714, it was stated that whenever the defect in the highway was not caused or produced by or arose from the wrong, defect, or negligence of an adjoining lot owner, then the statute did not make the lot owner primarily liable.

In 1898 the statute was revised and renumbered as sec. 1340 *a* and provided substantially as sec. 81.17 now reads.[4] *See* Wis. Stats., sec. 1340 *a* (1898) 1 Sanborn & Berryman, Annot. Stats. (1898), sec. 1340 *a*. In this revised section, the word "damage" was substituted for the words "defect, incumbrance or other cause of such injury," which was required to arise from or be produced

---

[4] In 1889, the statute provided that "Whenever any injury . . . shall happen . . . by reason of any defect in any highway . . . and such defect, incumbrance, or other cause of such injury shall be caused by, arise from, or be produced by, the wrong, default or negligence of any person or corporation . . . such person or corporation . . . so guilty . . . shall be primarily liable for all damages arising from such injury . . . ." *See* 1 Sanborn & Berryman, Annotated Statutes (1889), sec. 1339 *b*. This language was preserved until 1898 when the statute was revised to read: "Whenever any *damage* shall happen to any person or property . . . by reason of any defect in any highway . . . and such *damage* shall be caused or produced by or arise from, the wrong, default or negligence [of the municipal corporation] and of any person or private corporation, such person or private corporation responsible for such wrong, default or negligence shall be primarily liable therefor . . . ." (Emphasis supplied.) *See* 1 Sanborn & Berryman, Annotated Statutes (1898), sec. 1340 *a*.

by the wrong, default, or negligence of the third party in order to make such person primarily liable. Thus, whereas prior to revision, the statute referred to the plaintiff's damage as being caused by a defect in a highway and such defect being caused by the negligence of someone other than the city, the new statute merely referred to the damage caused by the negligence of the city and another person. The statute of 1898 creating sec. 1340 *a* was a revisor's statute and the revisor's note dealing with the section expressly states "An attempt has been made to condense and otherwise improve the language, without changing the legal effect thereof." *See* Revisor's Bill of 1897, Sanborn & Berryman's Annotations. The critical language of this statute has ever since remained unchanged; in 1923 the section was renumbered by the Laws of 1923, ch. 108, sec. 101; in 1943, it was revised by the Laws of 1943, ch. 334, sec. 76; and eventually became sec. 81.17.

If a revisor's revision of a statute is to be given the purported effect of not changing the statute and if the legislature has a right to rely on and not be misled by the revisor, then the legislature had no intention of changing the meaning of this statute even though the revisor unwittingly used language which would normally change the meaning of the statute. We point out that attempts to condense and otherwise improve language in legislation frequently lead to ambiguity and subsequent construction by this court rather than clarification. In cases when there is a revisor's revision, even though the language is ambiguous thereafter, the legislative history and prior interpretation of this statute must be resorted to to ascertain the intent of the legislature or this court must abandon the theory that revisor's bills cannot change the intent of the legislature. Every precaution should be used by a revisor not to change language in a statute because he believes he can say it better.

The interpretation that sec. 81.17, Stats., creating only a secondary liability in a city, applies only when the tort-feasor other than the city contributes to the defect or insufficiency of the highway is also given some support by the fact that prior cases construing sec. 81.17 have all involved highway defects created by some private tort-feasor.[5]

Furthermore, the interpretation contended for by Eau Claire county would be contrary to the trend of tort liability in this state and would run counter to the thrust of *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618, in which this court abrogated the doctrine of governmental immunity. Enlarging the cases by judicial construction in which governmental units are only secondarily liable is in effect granting partial or conditional immunity. Having abolished governmental tort immunity, sec. 81.15, Stats., which was related to sec. 81.17, is no longer needed as a basis of liability and its existence is somewhat ambiguous. It has been suggested "A lot of confusion in the practice would be avoided if the legislature would repeal sec. 81.15," *Schwartz v. Milwaukee* (1969), 43 Wis. 2d 119, 168 N. W. 2d 107, and that the section "exists only to provide the procedure to

[5] *Cooper v. Milwaukee* (1897), 97 Wis. 458, 72 N. W. 1130; *Schaefer v. Fond du Lac* (1899), 104 Wis. 39, 80 N. W. 59; *Devine v. Fond du Lac* (1902), 113 Wis. 61, 88 N. W. 913; *Gordon v. Sullivan* (1903), 116 Wis. 543, 93 N. W. 457; *Hay v. Baraboo* (1906), 127 Wis. 1, 105 N. W. 654; *Block v. Fond du Lac* (1909), 141 Wis. 85, 123 N. W. 654; *Raether v. Town of Mentor* (1910), 142 Wis. 238, 125 N. W. 468; *Matson v. Dane County* (1920), 172 Wis. 522, 179 N. W. 774; *Smith v. Clayton Construction Co.* (1926), 189 Wis. 91, 206 N. W. 67; *Brown v. Milwaukee Terminal Ry. Co.* (1929), 199 Wis. 575, 224 N. W. 748, 227 N. W. 385; *First Nat. Bank & Trust Co. v. S. C. Johnson & Sons* (1953), 264 Wis. 404, 59 N. W. 2d 445; *Weis v. A. T. Hipke & Sons, Inc.* (1955), 271 Wis. 140, 72 N. W. 2d 715; *Rudolph v. Currer* (1959), 5 Wis. 2d 639, 94 N. W. 2d 132; *Hei v. Durand* (1963), 22 Wis. 2d 101, 125 N. W. 2d 341; *Peppas v. Milwaukee* (1966), 29 Wis. 2d 609, 139 N. W. 2d 579, 141 N. W. 2d 228.

prosecute a claim for negligence and as a limitation upon the amount of recovery for negligence relating to the sufficiency or want of repair of a highway," *Schwartz v. Milwaukee* (1972), 54 Wis. 2d 286, 195 N. W. 2d 480.

This court has not been inclined to widen the scope of the statute. In *Armour v. Wisconsin Gas Co.* (1972), 54 Wis. 2d 302, 195 N. W. 2d 620, this court restricted sec. 81.17, Stats., to defects in highways and would not enlarge the concept by the construction of "or from any other cause" to mean anything other than a defect in the highway. Since *Holytz*, public policy has not demanded that a municipality should be only secondarily liable for a defect in highways which is a contributing substantial factor in the cause of an injury.

Eau Claire county relies upon language in *Weis v. A. T. Hipke & Sons, Inc., supra*, but the language in this opinion, as in other opinions, must be read in the light of the facts. The language in every decision is underpinned by limiting facts unless it is expressly stated otherwise. In *Hipke*, the plaintiff was injured when he stepped off of a sidewalk into a ditch. Hipke had dug the ditch, ran it under the sidewalk, and had placed guardrails on the sidewalk which were removed by city employees prior to the accident. Hipke argued the city had failed to replace his railings and, therefore, it bore the sole responsibility. The court held on demurrer that if both Hipke and the city were liable to the plaintiff because of the defect in the sidewalk, the city would be only secondarily liable. The court then continued with the language relied on by Eau Claire county that "if the damages are caused by the wrong of the city '*and* of any person, or private corporation, such person or private corporation shall be primarily liable therefor.' . . . The city remains primarily liable for its nuisance in the highway to the plaintiff only when there is a failure to fasten what, in the absence of the statute, would be joint liability on someone

else; but if there is such failure Hipke has to pay plaintiff nothing and so has nothing to recover from the sole tort-feasor. As soon as the private corporation is found liable because of its own wrong, default, or negligence, its liability becomes primary and neither joint nor secondary." It is obvious in *Hipke* that the liability of Hipke and the city of New Holstein arose as a consequence of their joint participation in and contribution to the creation of the sidewalk defect which caused the injury to Weis, and the language of the opinion must be read in the light of these facts and not as establishing a rule of law on an issue not raised by the facts.

We must hold, therefore, that sec. 81.17, Stats., does not apply here since it creates a secondary liability on a town, city, village, or county, for defects in a highway which cause damage only when the negligence, wrong, or default of another tort-feasor also causally contributes to that defect.

*By the Court.*—Judgment affirmed.