UNIGARD INSURANCE COMPANY, Plaintiff-Appellant,

v.

INSURANCE COMPANY OF NORTH AMERICA, as insurer for Keystone Heating & Air Conditioning Company, Lowell J. Katt, d/b/a Keystone Heating & Air Conditioning Company, Master Plumbers Limited Mutual Liability Insurance Company, as insurer for Success Plumbing Company, Kenneth G. Heyman, d/b/a Success Plumbing Company, Northern Assurance Company of America, as insurer for Electrical Services Company, and Norm Winther, d/b/a Electrical Services Company, Defendants-Respondents.

Court of Appeals

No. 93–1644. *Submitted on briefs February 1, 1994.—Decided April 12, 1994.*

(Also reported in 516 N.W.2d 762.)

For the plaintiff-appellant the cause was submitted on the briefs of *Schellinger & Doyle, S.C.* by *Timothy J. Strattner* and *Linda Vogt Meagher*, of Brookfield.

For the defendants-respondents Insurance Company of North America as insurer for Keystone Heating and Air Conditioning Company, and Lowell J. Katt d/b/a Keystone Heating and Air Conditioning Company the cause was submitted on the briefs of *Bascom Law Offices* by *Richard E. Ceman, Jr.*, of Milwaukee.

For the defendants-respondents Northern Assurance Company of America, Electrical Services Company, Norm Winther d/b/a Electrical Services Company, Success Plumbing Company, and Kenneth

G. Heymen d/b/a Success Plumbing Company the cause was submitted on the briefs of *Piette & Jacobson* by *James J. Jacobson* and *Michael T. Steber*, of Milwaukee, and *Hinshaw & Culbertson* by *Thomas R. Schrimpf* and *Jeffrey R. Munson*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

WEDEMEYER, P.J. Unigard Insurance Company (Unigard) appeals from judgments dismissing its contribution and indemnification actions against Keystone Heating and Air Conditioning (Keystone), Success Plumbing Company (Success) and Electrical Services Company (Services) — collectively referred to as the "Installers."

Unigard claims trial court error in barring it from pursuing a nonparty, nonsettling tort-feasor for contribution or indemnification. Because of the terms of the *Pierringer* release executed between Unigard and the plaintiff, it surrendered any right to contribution or indemnification from nonparty, nonsettling tort-feasors and, therefore, we affirm.

## I. BACKGROUND

The facts underlying the genesis of this lawsuit are not in dispute. On July 12, 1987, Jeanine Jenkins died of carbon monoxide poisoning in her home. Her husband, LeRoy Jenkins, survived, but was seriously injured. On November 28, 1988, Mr. Jenkins filed a lawsuit in Milwaukee County Circuit Court, *Jenkins v. F.L. Industries, Inc.*, Case No. 88-CV-01859. In the lawsuit, Mr. Jenkins alleged that one or several component parts contained in a swimming pool heater located in the Jenkins' home malfunctioned, causing carbon monoxide to escape.

The defendants named in the *Jenkins* lawsuit had manufactured component parts contained in the pool heater. F.L. Industries, Inc., manufactured and designed a Reznor venter. Columbus Electric, Unigard's insured, manufactured a flow switch that was incorporated within the heater. Finally, Fasco Industries, Inc., manufactured the heater's motor.

In early 1989, following a petition for removal by F.L. Industries, the lawsuit was removed to federal court. The defendants then set out to determine who had installed the component parts. After a lengthy discovery process, it was learned that Keystone, Success and Services had helped install some of the component parts of the pool. F.L. Industries, in concert with counsel for Columbus Electric and Unigard, subsequently sought to join these Installers. Although the statute of limitations barred the Jenkins' claim against the Installers, the *Jenkins* defendants had potential contribution and indemnification claims against the Installers. The district court, however, denied the *Jenkins* defendants' motion because it feared that joining the additional parties would delay the trial of the case.

Shortly before trial, Unigard, on behalf of its insured, Columbus Electric, settled with Mr. Jenkins. In consideration of $600,000, Mr. Jenkins entered into a *Pierringer*-type release with Unigard and Columbus Electric. In the release, Unigard generally reserved the right to bring a future cause of action it might have had "against any other person or entities." Consequently, Unigard and Columbus Electric were dismissed from the underlying action.

Following a trial, the jury found that both F.L. Industries and Columbus Electric had been negligent with respect to their component parts, but that such negligence was not causal. The jury also determined

that the three nonparty installers were eighty percent causally negligent for the Jenkins' injuries.[1] Finally, the jury found that Mr. Jenkins had been twenty percent causally negligent in bringing about the injuries. The jury awarded $9.6 million in damages. Because the Installers were not named as defendants in the *Jenkins* lawsuit, and because the statute of limitations prohibited Mr. Jenkins from filing suit against the Installers, Mr. Jenkins received no part of the $9.6 million award.

Subsequently, Unigard filed a lawsuit against the Installers for the $600,000 it paid Mr. Jenkins. The Installers brought a motion for summary judgment arguing that Unigard was not entitled to bring a contribution or indemnification action against them because of the *Pierringer* release. The trial court agreed and granted judgment for each of the Installers. Unigard now appeals.

## II. DISCUSSION

### A. *Standard of Review*

"When reviewing the grant of a summary judgment motion, this court is required to apply the standards set forth in sec. 802.08, Stats., just as the trial court was to apply those standards." *Voss v. City of Middleton,* 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991). When there is no dispute as to a material issue of fact, as in the present case, we must determine whether the defendants were entitled to a judgment as a matter of law. *See id.* at 749, 470 N.W.2d at 629. In performing this function, we act *de novo. See Green*

---

[1] The jury did not allocate a percentage of negligence to each installer.

*Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

## B. Application

Unigard contends that because it was unable to join the Installers as parties in the original *Jenkins* action and, because it specifically reserved its right to pursue a contribution or indemnity action against the Installers, the trial court erred in granting summary judgment against it. Unigard asserts that the *Pierringer* release executed with Mr. Jenkins allows it to maintain a contribution or indemnification claim against a nonparty, nonsettling tort-feasor. To support its position, Unigard points to the following portion of the release:

> The parties agree that the litigation presently existing between the parties to this agreement and pending in Federal District Court for the Eastern District of Wisconsin, Case No. 88-C-1402 may be dismissed as to the settling parties, with prejudice, upon their merits and without costs to any party upon execution of this agreement. *Columbus and Unigard are not releasing any rights, claims or causes of action of any nature they may have against any other person or entities.* (Emphasis added.)

Unigard explains its reason for entering into this type of settlement as follows. In the *Jenkins* case, following the district court's decision denying Unigard's request to join the Installers, and taking into account its insurance coverage limitations, Unigard was forced to seek a settlement. Nevertheless, Unigard pursued a settlement with the intent to seek contribution and indemnification from parties not named in the *Jenkins* suit. Thus, it claims that the *Pierringer* release only

prevented contribution or indemnification actions against the nonsettling parties *named* in the lawsuit. Since the Installers were not named parties in the *Jenkins* case, they were not "nonsettling tort-feasors" in *Pierringer* phraseology.[2]

We note here the additional language in the *Pierringer* release as used by the parties:

> As a further consideration, the releasing parties agree to indemnify the released parties released herein and to save them harmless *from any claims for contribution made by others so adjudged jointly liable* with the parties being released, and releasing parties agree to satisfy any judgment which may be rendered in their favor, *satisfying such fraction, portion or percentage of the judgment as the causal negligence of all adjudged tortfeasors.*

By the terms of the *Pierringer* release executed by the parties, there was to be an accounting of the causal negligence of all of the adjudged tort-feasors. The jury verdict form used in the federal trial, in accord with Wisconsin comparative negligence law, did just that by including Columbus Electric, F.L. Industries, Mr. Jenkins and the Installers. All tort-feasors were taken into account whether named or not.

Under Wisconsin comparative negligence law, it is required that the degree of negligence of both party and nonparty tort-feasors be determined in a negligence action. The basis for this apportionment is the equitable precept that a negligent party only pay for its fair share of the total negligence. Consequently, a *Pierringer* release, based on the same equitable

---

[2] F.L. was the only "nonsettling tort-feasor" at the time of trial. It chose not to settle prior to trial and was eventually absolved of any causal negligence.

underpinnings, must necessarily encompass and account for all of the adjudged tort-feasors. To account for the total amount of negligence, the release makes no distinction between named party tort-feasors and nonparty tort-feasors.

Prior to the actual determination at trial of how negligence is to be apportioned among possible joint tort-feasors, the only certainty is that all of the negligence equals one hundred percent and that all claims find their well-spring in this finite quantity. In this context, parties exploring settlement opportunities normally are unable, with any exactitude, to predict the ultimate allocation of negligence between them. In reaching a settlement, each party, seeking to pay for only its just share of liability or less, will accede to some proportion of what they estimate is their potential causal negligence. Parties who seek a settlement and release from liability on a negotiated basis can do so with assurance of the consequences if they utilize an appropriate settlement agreement.

The terms of the *Pierringer* release in this case protected Unigard from contribution or indemnification from nonsettling tort-feasors which involved several named, as well as unnamed, suppliers and installers. In electing to execute a *Pierringer*-type release, we presume Unigard weighed the advantages and disadvantages of alternate forms of releases, i.e., a general release or a covenant not to sue. Unigard might have elected to purchase a general release which would have preserved its right to contribution or indemnification regardless of whether the statute of limitations had run on the underlying cause of action. *See State Farm Mutual Automobile Ins. Co. v. Schara*, 56 Wis. 2d 262, 264-66, 201 N.W.2d 758, 759-60 (1972). Alternatively, Unigard might have negotiated a covenant not

to sue which also would have preserved its right to contribution and indemnification if it overpaid. The correlative disadvantage of this type of release is that an underpayment exposes the settling tort-feasor to contribution or indemnification by the nonsettling tort-feasors.[3]

There are distinct consequences arising from the execution of a general release, a covenant not to sue or a *Pierringer* release. The existence of these consequences cannot be questioned and ought be a forewarning to the unwary. By opting for a *Pierringer*-type release, Unigard obviously was interested in more protection than the covenant not to sue or the general release would provide.[4] Further, by purchasing the *Pierringer* release, Unigard did not discharge the putative negligence of any other party. Mr. Jenkins was still free to pursue his claims against other joint tort-

---

[3] For an excellent history and analysis of the development of the various forms of releases see Harold J. McComas, *Tort Releases in Wisconsin*, 49 MARQ. L. REV. 533 (1966).

[4] In response to the nonnamed tort-feasors argument that Unigard should have procured a general release if it wished to preserve its claim, Unigard argues that obtaining a general release was impossible because no liability existed at the time of settlement because of the statute of limitation. We disagree with this analysis because "common liability for contribution is determined from the point of time of the damage occurrence, irrespective of whether the common liability has been later extinguished as to one of the joint tort-feasors, such as by the failure to fulfill a statutory notice requirement." *Johnson v. Heintz*, 73 Wis. 2d 286, 295-96, 243 N.W.2d 815, 823 (1976) (citations omitted). Consequently, where a settling tort-feasor has taken the proper release, Wisconsin law does not prohibit a settling defendant from obtaining contribution or indemnity from a nonsettling tort-feasor after the statute of limitations has expired.

feasors. Once Unigard negotiated such a settlement, the nature of its rights were determined. Unigard could then reserve only what it rightfully and equitably possessed. Because we conclude that Unigard had no legal or equitable basis on which to assert a claim for contribution or indemnification against the Installers, *a fortiori*, it could not have reserved those rights.[5]

In the practical world of negotiating a settlement, when a joint tort- feasor agrees to settle and execute a *Pierringer* release, such as Unigard did here, it purchases by contract an unspecified portion of the total liability for negligence and, in turn, is dismissed from the action with certain well-known protections. In doing so, it assumes the possible risk of paying too much for its peace of mind. Equity, logic and common sense convince this court that the body of law interpreting the consequences of a *Pierringer* release should not have any different application to a nonparty tort-feasor versus a named party tort-feasor. Simply put, because the *Pierringer* release protects a settling defendant from contribution or indemnification claims of nonparty tort-feasors, the settling defendant's own claims

---

[5] The principle providing the basis for *Pierringer* is the equitable protection not only for the settling tort-feasor, but also the nonsettling tort-feasor. A nonsettling tort-feasor has no control over a claimant's decision to settle with another tort-feasor. On the other hand, the settling tort-feasor possesses the power to assess its own risks. The settling tort-feasor liquidates the risk by buying the percentage of liability it believes could be attributed to it. Once the settling tort-feasor buys his peace, *Pierringer* notes that "[i]t makes no practical difference to the settling tort-feasor what percentage of causal negligence is allocated to them . . . ." *Pierringer v. Hoger*, 21 Wis. 2d 182, 192, 124 N.W.2d 106, 112 (1963).

for contribution or indemnification against nonparty tort-feasors are likewise barred. Thus, we conclude that Unigard's claim for contribution or indemnification against the nonparty tort-feasors was appropriately dismissed as a matter of law by the trial court.[6]

*By the Court.*—Judgments affirmed.

FINE, J. (*dissenting*). *Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963), held that where more than one tortfeasor was liable for a plaintiff's injuries, the plaintiff's settlement with one of the tortfeasors resulted in the non-settling tortfeasors losing their rights of contribution from the settling tortfeasor if the settlement agreement satisfied that portion of the plaintiff's claim attributable to the settling tortfeasor. Thus, any judgment against a "nonsettling defendant should only be for that percentage of negligence allocated to him by the findings or verdict," because "[t]he claim for the balance has been satisfied by the plaintiff" *via* the settlement agreement. *Id.*, 21 Wis. 2d at 193, 124 N.W.2d at 112. *See also Brandner v. Allstate Ins. Co.*, 181 Wis. 2d 1058, 1061, 1073, 1079 n.13, 512 N.W.2d 753, 755, 760, 763 n.13 (1994). In my view, *Pierringer* has no application here.

As the majority points out, LeRoy Jenkins' action named three defendants, including Unigard Insurance

---

[6] We further note that by entering into a settlement, Unigard promoted judicial economy and received the benefit of its bargain with Mr. Jenkins — no requirement to participate in the first trial. To now ignore the obvious wording of the release and permit a second trial examining the same fact situation would defeat all the salutary effects of the *Pierringer* law and frustrate the goal of judicial economy.

Company's insured, Columbus Electric Manufacturing Company. The companies that installed various component parts in the pool heater were not joined in the action, even though, as the majority notes, the defendants had potential claims for contribution and indemnification against them.

Columbus Electric and Unigard settled with Jenkins before trial. The release:

1. settled Jenkins' claims against Columbus Electric and Unigard;

2. satisfied "that portion of the total amount of damages" sustained by Jenkins "because of the negligence, if any, of [Columbus Electric and Unigard], as may hereinafter be determined to be the case in any trial or other disposition of this or any other action";

3. declared that it was Jenkins' intention "to release and discharge, and [Jenkins does] hereby release and discharge that fraction and percentage of causal negligence found against [Columbus Electric and Unigard], if any, of [Jenkins'] total cause of action and claim for damages as may ultimately be determined by trial or other disposition";

4. provided that Jenkins would indemnify Columbus Electric and Unigard for "any claims for contribution" made by tortfeasors adjudged to be jointly liable with Columbus Electric and Unigard for Jenkins' damages;

5. preserved to Columbus Electric and Unigard their "rights, claims [and] causes of action of any nature they may have against any other person or entity";

6. preserved to Jenkins his right to assert claims except those specifically released.

This release tracked *Pierringer,* and extinguished only that portion of Jenkins' claims that was attributable to the negligence of Columbus Electric. *See Brandner,* 181 Wis. 2d at 1073, 512 N.W.2d at 760. It did not, and could not by its terms, extinguish claims of Columbus Electric and Unigard against the installers. Accordingly, I respectfully dissent, and would remand to the trial court for resolution of the other issues raised by the parties, but not addressed by either the trial court or the majority opinion, and for which the summary-judgment methodology appears to be inappropriate.