Renee K. VANCLEVE and Thomas C. VanCleve,
Plaintiffs-Respondents-Petitioners,

v.

CITY OF MARINETTE and Wausau Insurance Company, Defendants-Appellants,

Kenneth KELLER, d/b/a Keller Cement Contractors, Keller Cement Contractors, Auto Owners Insurance, and State Farm Fire & Casualty, Co., Defendants.

Supreme Court

*No. 01–0231. Oral argument October 7, 2002.—Decided January 3, 2003.*

2003 WI 2

(Also reported in 655 N.W.2d 113.)

For the plaintiffs-respondents-petitioners there was a brief by *Jonny L. Waara* and *Petrucelli & Petrucelli, P.C.,* Iron River, Michigan, and oral argument by *Jonny L. Waara.*

For the defendants-appellants there was a brief by *James O. Moermond, III,* and *Law Offices of Stilp and Cotton,* Wausau, and oral argument by *Peter M. Farb.*

¶ 1. N. PATRICK CROOKS, J. Rene and Thomas VanCleve (VanCleve) commenced this action to recover damages arising out of an injury Rene VanCleve sustained to her left knee when she fell into a trench adjacent to a newly installed cement curb in the City of Marinette. VanCleve now seeks review of a published decision of the Court of Appeals, District III, which reversed a judgment in the amount of $49,311.15 entered against the City of Marinette (City) by the Circuit Court for Marinette County, the Honorable Tim A. Duket presiding.

¶ 2. The parties dispute how a *Pierringer*[1] release, between an injured plaintiff and the defendant who is primarily liable under Wis. Stat. § 81.17 (1999–2000),[2] affects the enforceability of a judgment against a non-settling municipality in light of the statute. Section 81.17 establishes the statutory liability of a municipality or a person or private corporation when injury results from a highway defect.

---

[1] The court of appeals correctly noted that "[a] *Pierringer* release operates to impute to the settling plaintiff whatever liability in contribution the settling defendant may have to non-settling defendants and to bar subsequent contribution actions the non-settling defendants might assert against the settling defendants." *VanCleve v. City of Marinette,* 2002 WI App 10, ¶ 3 n.1, 250 Wis. 2d 121, 639 N.W.2d 792 (Ct. App. 2001) (citing *Pierringer v. Hoger,* 21 Wis. 2d 182, 192–93, 124 N.W.2d 106 (1963)).

[2] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

■

¶ 3. The critical language of Wis. Stat. § 81.17 has remained unchanged since 1898, and has been clearly and consistently interpreted by this court. Section 81.17 clearly establishes successive liability between a person or private corporation who is, under the statute, primarily liable and a municipality who is deemed to be secondarily liable. We hold, therefore, that a municipality may not be held to pay the remaining amount of the jury award when an injured plaintiff enters into a *Pierringer* release with the defendant (here Kenneth Keller d/b/a Keller Cement Contractors) who is primarily liable under the statute.

¶ 4. Wis. Stat. § 81.17 further provides that a judgment against a municipality is not enforceable until execution has been issued against the party found primarily liable and returned unsatisfied. Since Van-Cleve has not obtained, and cannot obtain, a judgment against the defendant Keller, no execution can issue and be returned unsatisfied, and, therefore, VanCleve cannot enforce a judgment against the City.

¶ 5. In addition, we hold that the City did not waive its statutory affirmative defenses by failing to object to the *Pierringer* release and stipulating to the dismissal, because the City did not have a legal basis to make such an objection. Similarly, we hold that the Stipulation and Order of Dismissal is not a waiver of the City's affirmative defenses, since it does not resolve any of the claims between VanCleve and the City pursuant to the *Johnson* and *Pierringer* cases. *Johnson v. Heintz,* 73 Wis. 2d 286, 297, 243 N.W. 2d 815 (1976); *Pierringer v. Hoger,* 21 Wis. 2d 182, 193, 124 N.W.2d 106 (1963).

86

¶ 6. Finally, we hold that VanCleve's public policy arguments fail because the statutory language of Wis. Stat. § 81.17 is unambiguous, and we have previously ruled that public policy considerations cannot trump unambiguous statutes. Additionally, VanCleve's argument that the application of § 81.17, as applied here, will stifle future settlement agreements ignores the clear statutory history of § 81.17 and our previous decisions applying the statute. Parties should have adequate notice of the risks involved in entering into settlements, and it is incumbent upon the party entering into a *Pierringer* release to be aware of the risks associated with such an agreement and make settlement decisions accordingly.

¶ 7. If we adopt VanCleve's policy argument, we would, in essence abrogate the intent of Wis. Stat. § 81.17 and render the statute meaningless.

¶ 8. Accordingly, we affirm the court of appeals' decision.

## I. FACTS

¶ 9. The facts in this case are undisputed. In August 1998, Renee VanCleve injured her left knee when she fell into a trench adjacent to a newly installed cement curb in the City of Marinette. VanCleve sued both the City and the contractor, Kenneth Keller, d/b/a Keller Cement Contractors (Keller), alleging negligence in the construction and maintenance of the curb and gutter. Keller was named in the suit based on information from the City, stating that the contractor was also responsible for the curb that VanCleve injured herself on. In addition to providing this information, the City cross-claimed against Keller for contribution alleging negligence.

¶ 10. The City asserted Wis. Stat. §§ 81.17 and 81.15 among several affirmative defenses.[3] In August 2000, VanCleve signed a *Pierringer* release, *Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963), which released Keller from all claims. The *Pierringer* release terms provided that in exchange for $7,500, VanCleve would release Keller and the insurers from any claims resulting from VanCleve's fall on August 24, 1998. Pet'r App. at 105. The *Pierringer* release also stated that VanCleve reserved the claims against the City.

---

[3] Wisconsin Stat. § 81.17 states:

Whenever damages happen to any person or property by reason of any defect in any highway or other public ground, or from any other cause for which any town, city, village or county would be liable, and such damages are caused by, or arise from, the wrong, default or negligence thereof and of any person, or private corporation, such person or private corporation shall be primarily liable therefore; but the town, city, village or county may be sued with the person or private corporation so primarily liable. If the town, city, village or county denies its primary liability and proves upon whom such liability rests the judgment shall be against all the defendants shown by the verdict or finding to be liable for damages; but judgment against the town, city, village or county shall not be enforceable until execution has been issued against the party found to be primarily liable and returned unsatisfied in whole or in part; on such return being made the defendant town, city, village or county shall be bound by the judgment. The unpaid balance shall be collected in the same way as other judgments.

Wisconsin Stat. § 81.15 states in relevant part:

If damages happen to any person or his or her property by reason of the insufficiency or want of repairs of any highway which any town, city or village is bound to keep in repair, the person sustaining damages has a right to recover the damages from the town, city or village. If the damages happen by reason of the insufficiency or want of repairs of a highway ... [t]he amount recoverable by any person for any damages so sustained shall not exceed $50,000. The procedures under s. 893.80 shall apply to the commencement of actions brought under this section ....

¶ 11. Following the signing of the *Pierringer* release, the circuit court approved a stipulation and signed an order to dismiss. The City joined the stipulation to dismiss Keller from the lawsuit, which expressly stated that the City's cross-claim against Keller was settled.

¶ 12. After the Stipulation and Order for Dismissal, the jury returned a special verdict finding the City ninety percent (90%) causally negligent, Keller nine percent (9%) causally negligent, and VanCleve one percent (1%) causally negligent. The jury awarded VanCleve $15,000 in past non-economic loss damages, and $60,000 in future non-economic loss damages.

¶ 13. The City filed a motion to dismiss VanCleve's claim, arguing that no judgment could be enforced against it, because it would violate the requirements of Wis. Stat. § 81.17. The City claimed that the judgment against it was not enforceable until execution of a judgment against Keller was returned unsatisfied. Because VanCleve settled with Keller, the City argued that VanCleve cannot recover against it. The circuit court denied the City's motion and ordered a judgment be entered against the City, and limited it to $50,000 in accordance with Wis. Stat. § 81.15 and § 893.80(3).[4]

¶ 14. The City appealed and the court of appeals reversed. In its holding, the court of appeals held that the City was not responsible for paying any amount of the jury verdict under Wis. Stat. § 81.17 because, under the statute, if no judgment was entered against the individual who is primarily liable, then the City, who is secondarily liable, cannot be held to pay. In its reasoning, the court of appeals asserted that VanCleve failed

---

[4] Wisconsin Stat. § 893.80(3) also caps recovery against a municipality at $50,000.

to cite any authority to support the argument that the City remains primarily liable for its ninety percent (90%) causal negligence. The court of appeals relied on *Weis v. A.T. Hipke & Sons, Inc.*, 271 Wis. 140, 72 N.W.2d 715 (1955), finding the statute to be unambiguous.[5]

¶ 15. VanCleve now seeks review of the decision of the court of appeals, and specifically asks this court to affirm the circuit court's decision, which granted judgment in the amount of $49,311.15 against the City. We granted VanCleve's petition for review and now turn to the issues presented.

¶ 16. Specifically, the issues presented in this case are: (1) If Wis. Stat. § 81.17 is applicable, what effect does entering into a valid *Pierringer* release with a settling defendant have for the plaintiff, VanCleve, in attempting to enforce judgment against the non-settling City of Marinette? (2) Did the City of Marinette, by its actions, waive its affirmative defenses?

■■■

¶ 17. The issues presented here require this court to interpret Wis. Stat. § 81.17. Statutory interpretation is a question of law we review independently, benefiting from the decisions of the court of appeals and the circuit court. *Industry to Industry, Inc. v. Hillsman Modular Molding, Inc.*, 2002 WI 51, 252 Wis. 2d 544, 644 N.W.2d 236. In interpreting a statute, we first look to the language of the statute itself to attempt to interpret it based on "the plain meaning of its terms." *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145 (1986). Furthermore, it is a well established rule that if the language of a statute is clear and unambiguous, the court must not look beyond the statutory language to

---

[5] *See VanCleve*, 250 Wis. 2d 121, ¶ 20. We recognize that *Weis* predates *Pierringer.*

ascertain the statute's meaning. Only when statutory language is ambiguous may we examine other construction aids such as legislative history, context, and subject matter. *State v. Waalen,* 130 Wis. 2d 18, 24, 386 N.W.2d 47 (1986).

¶ 18. VanCleve challenges the court of appeals holding on several grounds. On the first issue, relating to Wis. Stat. § 81.17 and the effect of the *Pierringer* release, VanCleve asserts that the statute is inapplicable here because Keller is not a party to the lawsuit. Next, VanCleve argues that the court of appeals erred, and that a judgment can be entered against the City even though there was a valid *Pierringer* release.

¶ 19. Next, in addressing the second issue, Van-Cleve maintains that by failing to object to the *Pierringer* release, and because of its stipulation to the dismissal of its cross-claims against Keller, the City waived its statutory affirmative defense that it was not primarily responsible or liable for this action. Similarly, VanCleve argues that in failing to object to the Stipulation and Order of Dismissal, thereby dismissing its cross-claims, the City waived its assertion that it was not primarily liable in this action.

¶ 20. Finally, VanCleve argues that social policy considerations favor settlement over contribution. Van-Cleve maintains that if this court accepts the City's arguments, the end result will be the stifling of future settlements.

¶ 21. The City counters that the application of Wis. Stat. § 81.17 bars any recovery by VanCleve against the City. The City asserts that when the jury found Keller liable, his liability became primary pursuant to Wis. Stat. § 81.17. Therefore, since VanCleve did

not obtain a judgment against Keller, and chose instead to settle through a *Pierringer* release, VanCleve cannot recover against the City.

## II. APPLICABILITY OF WIS. STAT. § 81.17 AND EFFECT OF *PIERRINGER* RELEASE ON VANCLEVE CLAIM

¶ 22. As a threshold question, we must determine whether Wis. Stat. § 81.17 applies. We agree with the City that § 81.17 is applicable to the case at hand. First, § 81.17 creates primary and secondary liability for injuries caused by highway defects or defects on other public grounds. A curb and gutter falls under the definition of "[h]ighway defects" or defects on "other public grounds." *See* Wis. Stat. § 81.17. *See also, Weis v. A.T. Hipke & Sons, Inc.,* 271 Wis. 140, 141, 72 N.W.2d 715 (1955)(holding a ditch, gully or depression to fall under the definition of "highway" defect). Second, § 81.17 explicitly states that if any person or private corporation is found negligent, then that person or private corporation shall be primarily liable under the statute.

¶ 23. In addition to the plain language of the statute, Wisconsin case law interpreting the statutory language provides guidance on this issue.

¶ 24. In *Weis,* we held that according to Wis. Stat. § 81.17 any liability the City of New Holstein (city) may have under this statute is secondary, not joint. A city is only liable for the portion of damages and costs that the private individual is *unable* to pay. In reaching that decision, we looked at the language of the statute and rejected the plaintiff's argument, that under the statute, the city involved was required to deny

its primary liability and prove that the private property owner was primarily liable. In rejecting the plaintiff's argument we said that according to the statutory language which states: " . . . any person or private corporation shall be primarily liable . . . " the city cannot be jointly or primarily liable. In addition, we held that "[b]y statute the liabilities of these tort-feasors from the outset are successive, rather than joint . . . ." *Weis,* 271 Wis. at 144. Under such circumstances, the doctrine of contribution does not apply.

¶ 25. In a similar vein, we previously held in *Dickens,* that the municipal corporation (Eau Claire County) may not be held primarily liable. In that case, we addressed the application of Wis. Stat. § 81.17 and held that the statute creates "a secondary liability on a town, city, village, or county, for defects in a highway which cause damage only when the negligence of another tort-feasor also causally contributes to that defect." *Dickens v. Kensmoe,* 61 Wis. 2d 211, 220, 212 N.W.2d 484 (1973).

¶ 26. Thus, according to *Weis,* and *Dickens,* the City may not be held primarily liable, and there can be neither joint, nor primary liability on the part of a town, city, village, or county, if any person or private corporation has any liability. Rather, this liability is successive, and as a result, any liability the municipality may have is only for the portion of the damages and costs that the private individual is unable to pay. Since the jury found Keller liable, he became primarily liable in accord with Wis. Stat. § 81.17, and the City's liability is triggered only if execution has been issued against Keller and returned unsatisfied.

¶ 27. Based on the statute and the case law cited above, since Keller was found to be nine percent (9%)

causally negligent for VanCleve's injuries, it is clear that Keller is primarily liable under the statute. However, since Keller was dismissed from the action, no judgment can be rendered against Keller, and no execution can issue and be returned unsatisfied.

¶ 28. *Dickens v. Kensmoe,* 61 Wis. 2d 211, 212 N.W.2d 484 (1973), accurately sets forth the historical construction and development of Wis. Stat. § 81.17:

> The statutory liability of a municipality for damages sustained as a result of a highway defect goes back to the beginning of this state. This liability was first created by the Revised Statutes of 1849, ch. 16, sec. 103.[6] At that time, governments were immune from tort claims under a common-law, court-made rule which was expressly recognized in *Hayes v. Oshkosh* (1873), 33 Wis. 314, 14 Am. Rep. 760. The statute was a forerunner of present sec. 81.15 and was designed to ameliorate in part the harshness on the public of the doctrine of governmental tort immunity. This statute of 1849 expressly created liability on a town for damages caused by reason of the insufficiency or want of repair of a road. The language creating this liability became Title VI, ch. 19, sec. 120, Revised Stats. 1858, which was construed in *Kittredge v. Milwaukee* (1870), 26 Wis. 46. The court there held the statute imposed liability regardless of whether the municipality created the defect in the highway or the defect was allowed to exist due to insufficiency of repair.
>
> . . . .

[6] This statute provided in relevant part as follows:

"If any damage shall happen to any person, his team, carriage, or other property, by reason of the insufficiency or want of repairs of any bridge, or sluiceway, or road in any town of this state, the person sustaining such damages shall have a right to sue for and recover the same against such town . . . ."

Revised Stats. 1849, Title VI, ch. 16, 103.

Thereafter, municipalities began to enact ordinances designed to protect themselves from *Kittredge.* These ordinances generally provided that when the negligence of a private tort-feasor had created the defect for which the municipality was also liable statutorily, the municipality's liability was only secondary to the liability of the private tort-feasor. A city ordinance of this type was involved in *Hincks v. Milwaukee* (1879), 46 Wis. 559, 1 N.W. 230, and was held valid and constitutional.

. . . .

In 1889, a statute was enacted entitled "Primary Liability for Damages—Parties" which contained almost verbatim the language of these city ordinances. *See* Laws of 1889, ch. 471, secs. 1 and 2; 1 Sanborn & Berryman, Annotated Statutes (1889), sec. 1339 *b.*

. . . .

In 1898 the statute was revised and renumbered as sec. 1340 *a* and provided substantially as sec. 81.17 now reads. . . . The statute of 1898 creating sec. 1340 *a* was a revisor's statute and the revisor's note dealing with the section expressly states "An attempt has been made to condense and otherwise improve the language, without changing the legal effect thereof." . . . The critical language of this statute has ever since remained unchanged; in 1923 the section was renumbered by the Laws of 1923, ch. 108, sec. 101; in 1943, it was revised by the Laws of 1943, ch. 334, sec. 76; and eventually became sec. 81.17.

*Dickens,* 61 Wis. 2d at 214–217.

¶ 29. As noted above, Wis. Stat. § 81.17 was originally created when governments were immune from tort claims under the common law. *Dickens,* 61 Wis. 2d at 214. VanCleve argues that § 81.17 is inapplicable based on *Holytz v. City of Milwaukee,* 17 Wis. 2d 26, 115

95

N.W.2d 618 (1962), which abrogated the common law governmental immunity for tort claims. The City disagrees, and asserts that VanCleve's argument that § 81.17 should be interpreted to hold the City liable for the percentage of causal negligence as determined by the jury is without legal authority. If § 81.17 is interpreted as suggested by VanCleve, it would become, in essence, a joint liability statute, rather than a successive liability statute. Such an interpretation of § 81.17 would render § 895.045, the contributory negligence statute, to some extent unnecessary or redundant.[7] The City maintains that the critical language of § 81.17 has remained unchanged since 1898, and has been clearly and consistently interpreted by this court.

---

[7] 895.045. Contributory negligence

(1) Comparative negligence. Contributory negligence does not bar recovery in an action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if that negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributed to the person recovering. The negligence of the plaintiff shall be measured separately against the negligence of each person found to be causally negligent. The liability of each person found to be causally negligent whose percentage of causal negligence is less than 51% is limited to the percentage of the total causal negligence attributed to that person. A person found to be causally negligent whose percentage of causal negligence is 51% or more shall be jointly and severally liable for the damages allowed.

(2) Concerted action. Notwithstanding sub. (1), if 2 or more parties act in accordance with a common scheme or plan, those parties are jointly and severally liable for all damages resulting from that action, except as provided in s. 895.85(5).

¶ 30. As noted before, based on case law, it is clear that Wis. Stat. § 81.17 is a successive liability statute, rather than a government immunity statute. Accordingly, we find *Holytz* is not helpful in interpreting § 81.17 in the present case because it does not directly address § 81.17.

¶ 31. Next, VanCleve maintains that Wis. Stat. § 81.17 should be interpreted to hold the City liable for the percentage of causal negligence as determined by the jury. VanCleve argues that the purpose of Wis. Stat. § 81.17 is to protect municipalities from paying the portion of damages that were attributable to the individual who is primarily liable, and not to relieve a municipality from paying their portion of the damages.

¶ 32. This argument, while interesting, is not supported by any legal authority. The plain language of Wis. Stat. § 81.17 provides conditional protection to a municipality when it is sued along with another for injuries caused by highway defects. If both the municipality and the other individual or private corporation are found liable, the statute unambiguously states that the other person or private corporation is responsible for the entire award, if a judgment can be satisfied against it. Thus, § 81.17 is unambiguous, based on the case law and the clear language of the statute.

¶ 33. Consequently, we hold that the unambiguous statutory language of Wis. Stat. § 81.17 bars any recovery by VanCleve against the City. As previously noted, the critical language of § 81.17 has remained unchanged since 1898, and has been clearly and consistently interpreted by this court as illustrated in our opinions in *Weis* and *Dickens*.

¶ 34. When the jury found Keller liable, his liability became primary pursuant to Wis. Stat. § 81.17. So under the statute, Keller would have been responsible for all the damages and the municipality would have been responsible only for the damages Keller was not *able* to pay. In this case, the *Pierringer* agreement represents what Keller was *willing* to pay, not what he was *able* to pay upon an execution issued on a judgment. By entering into the *Pierringer* release, VanCleve was essentially agreeing to accept a lesser amount in damages by releasing the individual that turned out to be primarily liable under the statute. Therefore, since VanCleve did not obtain a judgment against Keller, and chose instead, to settle through a *Pierringer* release, VanCleve cannot recover against the City pursuant to § 81.17. The consequence of entering into the *Pierringer* release with Keller is that VanCleve, in essence, indirectly waived any right to hold the City secondarily liable.

¶ 35. Thus, according to the holdings in *Weis,* 271 Wis. 140, and *Dickens,* 61 Wis. 2d 211, under Wis. Stat. § 81.17 there can be neither joint, nor primary liability, on the part of a municipality, if any person or private corporation is liable.[8]

¶ 36. Accordingly, we hold that application of Wis. Stat. § 81.17 bars any recovery against the City. Since the jury found Keller liable, he is primarily liable and consequently, the City may not be held to pay the remaining amount of the jury award where, as here, an injured plaintiff enters into a *Pierringer* release with

---

[8] VanCleve argues here, like the parties argued in *Weis,* that this is a case among joint tort-feasors. *Weis v. A.T. Hipke & Sons, Inc.,* 271 Wis. 140, 144, 72 N.W.2d 715 (1955). We rejected that argument in *Weis* because Wis. Stat. § 81.17 establishes successive liability. *Id.*

the defendant, Keller, who is primarily liable under the statute. Since Keller was dismissed from the action, no judgment can be rendered against Keller, and no execution can issue and be returned unsatisfied.

### III. EFFECT OF *PIERRINGER* RELEASE ON AFFIRMATIVE DEFENSES

¶ 37. Next, in addressing the second issue of whether the City waived its affirmative defenses, VanCleve takes the position that that the City's failure to object to the *Pierringer* release waived its statutory affirmative defenses under Wis. Stat. § 81.17. We disagree. This argument fails to consider that there was no legal basis for the City to make such an objection. *See Unigard Ins. Co. v. Insurance Co. of N. Am.,* 184 Wis. 2d 78, 87 n.5, 516 N.W. 2d 762 (Ct. App. 1994) (holding "[a] non-settling tort-feasor has no control over a claimant's decision to settle with another tort-feasor"); and *Johnson v. Heintz,* 73 Wis. 2d 286, 297, 243 N.W. 2d 815 (1976) (holding "no objection [by the third party] could be raised to the fact that the plaintiff and a joint tort-feasor defendant were exercising the option approved by *Pierringer*"). Moreover, this argument incorrectly assumes, without citing to authority, that the City has the burden of objecting to a *Pierringer* release.

¶ 38. Generally, the rule is that a joint tort-feasor has a right to contribution from another tort-feasor for any sums the first tort-feasor is obligated to pay a plaintiff in satisfaction of the second's liability. *Fleming v. Threshermen's Mut. Ins. Co.,* 131 Wis. 2d 123, 130, 388 N.W.2d 908 (1986).

¶ 39. However, as previously noted, a *Pierringer* release, in effect, limits a second joint tort-feasor's liability to the amount reflecting its proportion of wrongdoing.[9] *Id.* Stated differently, a *Pierringer* release operates to impute to the settling plaintiff whatever liability in contribution the settling defendant may have to non-settling defendants and to bar subsequent contribution actions the non-settling defendants might assert against the settling defendants. *Pierringer,* 21 Wis. 2d at 193.

¶ 40. In *Pierringer,* the settling defendant moved for summary judgment to dismiss a cross-claim of a non-settling defendant for contribution, after it entered into a *Pierringer* release with the plaintiff. We held that as long as the causal, comparative and contributory negligence of all the relevant parties is determined by the jury, there is no requirement that a settling defendant remain a party to the suit. *Pierringer,* 21 Wis. 2d 182, 124 N.W.2d 106.

¶ 41. According to our decision in *Pierringer,* the non-settling tort-feasor has no control over a claimant's decision to settle with another tort-feasor. *Id. See also, Unigard,* 184 Wis. 2d 78 at 87 n.5.

¶ 42. In *Johnson,* a passenger in a car sued the driver and her insurance company, American Family Insurance. American Family then filed a third-party complaint against State Farm for contribution. State Farm insured the driver of a car that rear-ended the car the plaintiff rode in. In *Johnson,* the plaintiff entered into a *Pierringer* release with State Farm over Ameri-

---

[9] It should be noted that the rules with regard to joint and several liability have been changed by recent amendments to Wis. Stat. § 895.045(1).

can Family's objection. *Johnson,* 73 Wis. 2d at 294–95. The trial court approved the settlement agreement. On appeal, we recognized that it was harmless error for the trial court to approve the settlement agreement. *Id.* The plaintiff did not have a right to settle with State Farm because there was no direct claim against State Farm. *Id.* at 297. However, the error was harmless, because the parties could have taken steps to place themselves in a direct adversary position. *Id.* at 298. The court reasoned that had State Farm "been an initial party defendant . . . no objection could be raised to the fact that the plaintiff and a joint tort-feasor defendant were exercising the option approved by *Pierringer.* The settlement of the claim against a defendant under those circumstances requires that he be dismissed from the action." *Id.* at 297.

¶ 43. Applying the rules of *Pierringer* and *Johnson* to the present case, the City did not have standing to object to the release, since pursuant to the terms, VanCleve assumed all of Keller's potential liability. Furthermore, it is clear from the rules set forth above, a non-settling tort-feasor has no control over a claimant's decision to settle with another tort-feasor. *See also Unigard,* 184 Wis. 2d at 87 n.5.

¶ 44. Therefore, since VanCleve and Keller were direct adversaries, any attempt by the City to object to the *Pierringer* release would have been unsuccessful.

¶ 45. Consequently, we reject VanCleve's argument that the City waived its statutory affirmative defenses by failing to object to the *Pierringer* release. We approve of the court of appeals' approach, which held that the non-settling City, claiming secondary liability as an affirmative defense, was not required to object to a *Pierringer* release to retain its affirmative

defense.[10] VanCleve fails to cite any authority which places the burden of objecting to the release upon the non-settling tort-feasor in a successive liability case.

## IV. EFFECT OF STIPULATION AND DISMISSAL ORDER ON AFFIRMATIVE DEFENSES

¶ 46. Next, VanCleve argues that the City's failure to object to the Stipulation and Order of Dismissal, thereby dismissing its cross-claims, waived its assertion that it was not primarily liable under this action.

¶ 47. We disagree. The failure to object to the Stipulation and Order of Dismissal is not a waiver of affirmative defenses, since it does not resolve any of the claims between VanCleve and the City. This is supported by the fact that the Stipulation and Order failed to mention any affirmative defense. Additionally, VanCleve neglects to cite authority, and we have uncovered none, that supports the contention that in dismissing the cross-claim against Keller, the City waived its affirmative defense under Wis. Stat. § 81.17. (Def.-Appellant Br. at 16).

¶ 48. The City's cross-claim for contribution and its affirmative defenses are two distinct parts of the pleadings according to Wis. Stat. § 802.01(1). We have previously held that a writing must contain an express statement waiving a statutory affirmative defense before a court should find waiver. *Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 132–133, 403 N.W.2d 747, 756 (1987). Here, the City simply acquiesced in the

---

[10] The court of appeals correctly pointed out that "[i]t is VanCleve's responsibility to evaluate the effects of a *Pierringer* release and to determine whether the release is in her best interests." *VanCleve,* 250 Wis. 2d 121, ¶ 32.

dismissal, consistent with our decisions in *Johnson* and *Pierringer*, which stated that no objection could be raised, and that dismissal of the released defendant was required. Additionally, the City's cross-claim against Keller was a standard cross-claim for indemnification and contribution. Therefore, because the failure to object to the Stipulation and Order of Dismissal did not resolve any of the claims between VanCleve and the City, there was no waiver of an affirmative defense.

¶ 49. Ultimately, the City's ability to object to Keller's dismissal was eliminated when a *Pierringer* release had been signed by VanCleve releasing Keller. *Johnson*, 73 Wis. 2d at 296–297; *Pierringer*, 21 Wis. 2d 182. As a result, we hold that the City did not waive its assertion that it was not primarily liable, when it failed to object to the Stipulation and Order of Dismissal.

## V. PUBLIC POLICY ARGUMENT

¶ 50. Lastly, VanCleve raises a public policy argument that a ruling in favor of the City would stifle settlement of personal injury claims. VanCleve maintains that the application of Wis. Stat. § 81.17 does not promote settlement, and is contrary to Wisconsin's abrogation of governmental immunity pursuant to the decision in *Holytz*. However, it is a well- settled rule that if the language of a statute is clear and unambiguous, the court must not look beyond the statutory language to ascertain the statute's meaning. Only when statutory language is ambiguous may we examine other construction aids such as legislative history, context, and subject matter. *State v. Waalen*, 130 Wis. 2d 18, 24, 386 N.W.2d 47 (1986). As previously noted, the statutory language of § 81.17 is unambiguous. Therefore, we agree with the court of appeals that "[c]onsiderations of public

policy cannot trump an unambiguous statute." *Van-Cleve v. City of Marinette*, 2002 WI App 10, 250 Wis. 2d 121, 639 N.W.2d 792 (citing *Kelly Co. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992)).

¶ 51. The application of Wis. Stat. § 81.17 should not stifle future settlement agreements, because parties have adequate notice of the risks involved in entering into such settlements. Given the clear statutory language of § 81.17 and our previous decisions, it is incumbent upon the party entering into a *Pierringer* release to be aware of the risks associated with such an agreement and make settlement decisions accordingly.

¶ 52. Hence, VanCleve's public policy arguments are not persuasive in the context of an unambiguous statute.

## VI. CONCLUSION

¶ 53. In summary, pursuant to Wis. Stat. § 81.17, the effect of entering into a valid *Pierringer* agreement is that VanCleve is barred from any recovery against the City. The critical language of § 81.17 has remained unchanged since 1898, and has been clearly and consistently interpreted by this court. Section 81.17 clearly establishes successive liability between a person or a private corporation who is, under the statute, primarily liable, and a municipality, who is deemed to be secondarily liable. Therefore, a municipality may not be held responsible to pay the remaining amount of the jury award, when an injured plaintiff enters into a *Pierringer* release with the defendant (here Keller) who is primarily liable under the statute. Section 81.17 provides that judgment against a municipality is not enforceable until execution has been issued against the party found primarily liable and returned unsatisfied. Since VanCleve has not obtained, and cannot obtain, a judgment against Keller, no execution can issue and be

returned unsatisfied, and, therefore, VanCleve cannot enforce a judgment against the City.

¶ 54. Next, because there was no legal basis for the City to object to the *Pierringer* release, we hold that the City did not waive any statutory affirmative defense by failing to object to the *Pierringer* release.

¶ 55. For similar reasons, we hold that the City did not waive its assertion that it was not primarily liable in this action, by failing to object to the Stipulation and Order of Dismissal. The Order of Dismissal did not resolve any claims between the City and VanCleve, and the City's ability to object was eliminated when the *Pierringer* release was signed by VanCleve.

¶ 56. Finally, we hold that VanCleve's public policy arguments fail, because we have previously held that public policy considerations cannot trump unambiguous statutes. As noted before, VanCleve's argument that the application of Wis. Stat. § 81.17 as applied here will stifle future settlement agreements ignores the clear statutory history of § 81.17 and our previous decisions applying the statute. Parties should have adequate notice of the risks involved in entering into settlements, and it is incumbent upon the party entering into a *Pierringer* release to be aware of the risks associated with such an agreement and make settlement decisions accordingly. If we adopt VanCleve's policy argument, we would, in essence, abrogate the intent of § 81.17 and render the statute meaningless.

¶ 57. For the reasons set forth herein, the decision of the court of appeals is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.